Filed 7/6/15; pub. order 7/30/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.W. et al., Persons Coming Under the Juvenile Court Law. | B258054 |
| | (Los Angeles County Super. Ct. No. DK02852) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| K.G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Z. Zeidler, Judge. Affirmed as modified.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jeanette Cauble, Senior Deputy County Counsel, for Plaintiff and Respondent.

K.G. (mother) challenges the juvenile court's jurisdictional and dispositional order regarding her two children, M.W. (born in 2006) and Lamar W., Jr. (L.W.) (born in 2007). Although mother concedes jurisdiction was proper due to her substance abuse, she contends that findings made in connection with a subsequent petition were insufficient to establish jurisdiction and should be reversed. Specifically, she argues (1) her failure to obtain a protective order following a 2007 domestic violence incident with father did not expose the children to a current risk of harm and (2) the evidence was insufficient to establish that she knew or should have known of Lamar W. Sr.'s (father's) criminal history and sex offender status and placed the children at risk of harm by allowing him access to them. We agree with both contentions and modify the order to strike the allegations based on mother's failure to protect the children from father (counts b-2, b-3, and d-2). The order is affirmed in all other respects.

## FACTUAL AND PROCEDURAL SUMMARY

On December 24, 2013, mother consumed either "a 4-pack of wine" or "six medium bottles of Brandy" and ingested "a lot" of pain pills and psychotropic medication before getting into her car with M.W. and L.W. Mother pulled the car over and called 911 when she became dizzy and began vomiting. An ambulance took mother and the children to a hospital, where a relative picked up the children and mother was treated for depression and acute alcohol intoxication. A mandated reporter contacted the Los Angeles County Department of Children and Family Services (DCFS).

DCFS filed a petition pursuant to Welfare & Institutions Code[1] section 300, subdivision (b). DCFS alleged mother's history of substance and alcohol abuse and emotional problems[2] rendered her incapable of providing regular care and supervision of the children and placed them at risk of physical and emotional harm and damage.

---

[1] All further statutory references are to the Welfare & Institutions Code unless otherwise stated.

[2] The family had been referred to DCFS on two prior occasions. In July 2008, DCFS investigated and deemed inconclusive allegations that mother was emotionally abusing and generally neglecting the children, who were both under two years old, due to

2

Mother was cooperative with DCFS. She acknowledged her history of mental health and substance abuse issues and expressed a willingness to address those issues. Mother also informed DCFS that she broke up with father in 2005 due to spousal abuse and had not known his whereabouts since then. According to mother's initial statement, father had not had contact or visits with the children. However, she later stated on a parentage questionnaire that father had "received the child in his/her home." M.W. and L.W. both stated that "they have not heard or seen their father for a long time," and M.W. stated she had never seen anyone hit mother. DCFS ran a parent locator search for father on December 30, 2013 and found only an unverified address.

The juvenile court heard the petition on December 31, 2013. The court found that DCFS made a prima facie showing of jurisdiction and ordered the children detained with their maternal grandfather. The court granted mother a minimum of six hours of monitored visitation per week and gave DCFS discretion to place the children with mother at her inpatient treatment program. The court ordered DCFS to present evidence of due diligence in attempting to locate father before the next hearing, which was set for April 3, 2014.

DCFS filed a jurisdiction/disposition report on March 20, 2014. The report noted mother was "eager to comply with DCFS case plan and Court orders to get her children back into her care" and was progressing well in her inpatient treatment program. The report also indicated mother had spoken to DCFS about father. According to the report, mother informed DCFS that she had been in an emotionally abusive nonmarital relationship with father from 2005-2008. "[T]he last time that she and the children saw him was in July 2013"; mother did not know his current whereabouts or have any contact with him. The report noted that father "has not provided regular care to the children and his [whereabouts remain] unknown at this time."

---

her depression and alcohol abuse. In February 2013, DCFS investigated mother after she left the children with their maternal grandfather and attempted to commit suicide by ingesting Tylenol, Benadryl, Zoloft, and three bottles of wine. DCFS again concluded the allegations were inconclusive.

Sometime prior to the April 3, 2014 hearing, DCFS determined that father was housed in the Men's Central Jail in Los Angeles. Father appeared at the hearing and completed a statement regarding parentage in which he stated that the children lived with him "from birth to 2012" and that he provided support for them. The court found him to be the presumed father.

Mother appeared at the hearing and pleaded no contest to the allegations contained in the petition as amended by interlineation. The court found the amended allegations true and determined that the children were persons described by section 300, subdivision (b). The court put over the disposition hearing to June 11, 2014 to enable DCFS to interview and assess father and monitor mother's progress in her treatment program. The children remained in the care of their maternal grandfather.

DCFS interviewed father on May 20, 2014. According to a last minute information filed with the court, father told DCFS that he had "been with" mother for about 10 years and was still in a relationship with her. Father stated that he "has always been an active participant in his children's lives." Father also stated, however, that the children have not had contact with him during his incarceration and he did not want them to. Father told DCFS that he was arrested for assault on August 19, 2013, and remained in jail awaiting trial on that charge. He further informed DCFS that he was arrested for attempted murder and rape when he was a juvenile, took a plea deal, and served 15 years for the resulting conviction.

On June 6, 2014, DCFS filed a subsequent petition pursuant to section 342. In count b-1, DCFS alleged that father "has a criminal history of convictions of Rape/Etc.: Concert W/Force/Violence, Oral Copulation: Concert Force/Etc., Kidnapping, False Imprisonment, Force/ADW Not Firearm: GBI Likely" and was a registered sex offender. DCFS alleged that this "criminal conduct on the part of the father endangers the children's physical health and safety and places the children at risk of physical harm, damage, danger, and sexual abuse" within the meaning of section 300, subdivision (b). In count d-1, DFCS further alleged that the same conduct placed the children at substantial risk of sexual abuse pursuant to section 300, subdivision (d). DCFS included

4

a copy of father's criminal history report, which it obtained from CLETS.[3] The criminal history report reflected father's 1989 convictions for forcible rape, oral copulation, false imprisonment, and assault with a deadly weapon and his 2002 and 2010 convictions for failure to register as a sex offender. It also documented father's 1986 juvenile detention for robbery and his 1987 juvenile detention for forcible rape, kidnapping, lewd acts with a child under 14, and murder. It further reflected some of the current charges father faced, which were not crimes of assault as father said, but oral copulation by use of force and failure to register as a sex offender.

DCFS did not interview M.W. or L.W. in connection with its new allegations.[4] Mother told DCFS she was unaware that father was a registered sex offender.

Father filed a demurrer to the subsequent petition. He contended DCFS failed to state a cause of action for the children's dependency under section 300, subdivisions (b) and (d), because it failed to state specific facts connecting his criminal history to a substantial risk of serious physical harm or sexual abuse. DCFS opposed the demurrer. DCFS included in its opposition a more thorough description of the alleged conduct for which father was awaiting trial: according to the victim, father accosted her on April 27, 2009, dragged her into an alley, stole her possessions, and forced her to engage in reciprocal oral copulation with him. Father was not arrested in connection with these allegations until August 19, 2013.

DCFS further noted that it had "uncovered father's arrests for domestic violence against the mother in this case." DCFS provided an "incident report" documenting a single arrest, which occurred in 2007, in a subsequently filed last minute information. According to that report, mother told police officers who responded to her call that she

---

[3] CLETS is an acronym for the California Law Enforcement Telecommunications System, a computer system administered by the Department of Justice. (See *People v. Martinez* (2000) 22 Cal.4th 106, 113.)

[4] A court order dated December 31, 2013 provided that "no person is to discuss the case with the minor(s) nor in any way attempt to influence the minor(s) as to what they may say about the case."

5

and father had argued over who was going to feed M.W., who was then an infant.  Father "became increasingly angry," told mother "she needs to know her place," and slapped her once on the side of her face.  The police officers arrested father for spousal assault (Pen. Code, § 243, subd. (e)(1)).  Mother declined their offer of an emergency protective order.  Father ultimately was not charged in connection with the incident.  The record contains no further evidence of domestic violence.

The court denied father's demurrer on July 16, 2014.  The court also dismissed the subsequent petition without prejudice and permitted DCFS to file a first amended subsequent petition (amended 342 petition).

The amended 342 petition retained counts b-1 and d-1.  It also added two additional counts under section 300, subdivision (b) and one count under section 300, subdivision (d).  In amended count b-2, DCFS alleged that father sexually assaulted a minor child[5] in 2009 (the incident for which he was awaiting trial).  The count further alleged that mother "knew or should have known about the father's criminal conduct and yet allowed the father access to the children.  Such criminal conduct on the part of the father endangers the children's physical health and safety and places the children at risk of physical harm, damage, danger, and sexual abuse."  Amended count d-2 contained identical allegations and charged mother with failure to protect the children from sexual abuse.  In amended count b-3, DCFS alleged that mother and father "engaged in domestic violence on or about 2/27/07.  The mother failed to press charges, she declined a restraining order, and she allowed the father continued access to the children.  Such domestic violence between the mother and father and the mother's failure to protect the children endangers the children's physical health and safety and places the children at risk of physical harm, damage, and danger."

DCFS interviewed father and mother (but not the children) about the amended 342 petition. Father denied domestic violence and disputed the accuracy of counts b-2 and d-

---

[5]     Nothing in the record supports the allegation that the victim was a minor child.  After counsel for DCFS conceded as much at the jurisdictional and dispositional hearing, the court amended counts b-2 and d-2 to reflect that the victim was "a person."

2; he claimed the victim of the 2009 incident was not a minor. Father also expressed confidence that he would be "'vindicated'" on the still-pending charges stemming from the 2009 incident. Mother told DCFS that father never hurt and would not hurt M.W. and L.W. When informed of the allegations in counts b-2 and d-2, mother said, "'Is that true? I just don't see him [doing that] . . . I've known him for three years. I met him in 2005 and had my children with him in 2006 and 2007 . . . . I guess I have two children with him, so that sounds freaky.'" Mother further stated that she had raised the children for seven years and did not want father to have custody because she did not "think he has the stability, like a house or an apartment or a job."

Mother's own stability had improved by that point. She successfully completed her inpatient substance abuse treatment program and moved to a sober living facility, where she stayed for almost two months before "abrupt[ly]" leaving for a different facility around July 1. Although DCFS was unable to reach mother for approximately one week, all three of her recent drug tests were negative. The discharge summary from mother's inpatient program noted that she was "very active in recovery" and gave her a "good" prognosis.

The court held a jurisdictional and dispositional hearing on the amended 342 petition on July 23, 2014. Father asserted his Fifth Amendment rights and the matter was submitted without live testimony from any witness.

Father's counsel argued that all of the counts should be dismissed because they lacked a nexus to the children. Mother's counsel contended that mother had no ongoing contact with father and took appropriate measures to protect the children from him. She also asked the court to strike mother from count b-2 because mother was not aware of father's criminal history or status as a registered sex offender. The court responded, "If in the count (b) (3) the mother had gone to get a restraining order in 2007, that would have then required a CLETS to be run, and she would have become aware of his registered sex offender status. [¶] So in some ways, it might not be that she knew, but definitely she should have known because, if she had taken appropriate action during the

7

domestic violence incident, it would have generated the criminal history that she would have become aware of."

Counsel for the children asked the court to sustain the amended 342 petition. She contended that the current criminal charges against father "show[ ] that there is a risk to the children and that the father's behaviors are not - - they're dangerous, and they are not being resolved." She further argued that mother failed to acknowledge father's criminal behavior, and that any separation of father from the children was due to father's incarceration rather than any efforts by mother. She also informed the court that "according to the grandfather and the children," father's contact with the children had "been very minimal." Counsel for DCFS also requested that the amended 342 petition be sustained. Although there had not been any documented incidents of domestic violence since 2007, she argued that DCFS remained concerned about future incidents because father indicated he and mother were still in a relationship and mother "refuse[d] to pursue" a restraining order. Counsel for DCFS also asserted that mother "should have known of father's sex abuse crime and failure to register as a sex offender." She conceded, however, that nothing in the record showed that father assaulted a minor in 2009 and asked that the allegations be conformed to that proof.

The court conformed the allegations in counts b-2 and d-2 as DCFS requested and also struck sentences pertaining to father's recent arrest and bail. The court found the allegations true as amended, and also sustained counts b-1, b-3, and d-1. The court ordered the children placed in a suitable home (with their maternal grandfather, pending a waiver) but granted mother education rights. The court ordered DCFS to provide mother with reunification services and monitored visits twice weekly, with discretion to liberalize. It ordered mother to participate in an after-care substance abuse program with random drug testing, attend parenting classes, obtain individual counseling to address the case issues including domestic violence, and comply with all recommendations of her psychiatrist. The court denied father reunification services but granted weekly monitored visits upon his release from custody.

Mother timely appealed.

**DISCUSSION**

## I.   Justiciability

Mother acknowledges that because she does not contest all jurisdictional findings against her or those against father, the jurisdictional orders will not be reversed regardless of the outcome of this appeal.  As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings.  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)  We nonetheless retain discretion to consider the merits of a parent's appeal (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1493), and often do so when the finding "(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [Citation]."  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; see also *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; *In re Anthony G.* (2011) 194 Cal.App.4th 1060, 1064-1065.)

We agree with mother that merits review is warranted here.  The findings that mother knowingly or negligently exposed her children to a substantial risk of physical and sexual abuse are pernicious.  The finding in count d-2 (that mother failed to protect the children from a substantial risk of sexual abuse) carries a particular stigma.  The findings associated with count b-3 (that she failed to protect the children by declining to get a restraining order in 2007, thereby exposing them to a current risk of physical harm) appear to have motivated the court's order that mother address domestic violence in her individual counseling sessions and could potentially impact the current or future dependency proceedings.  Further, "refusal to address . . . jurisdictional errors on appeal . . . has the undesirable result of insulating erroneous or arbitrary rulings from review."  (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548.)  For these important reasons, we review mother's appeal on the merits.

9

## II. Standard of Review

DCFS has the burden of proving by a preponderance of the evidence that the children are dependents of the court under section 300. (*In re I.J.* (2013) 56 Cal.4th 766, 773; § 355, subd. (a); § 342.) Mother argues DCFS failed to carry this burden on counts b-2, b-3, and d-2 of the amended 342 petition.

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] '"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].'" [Citation.]" [Citation.]'" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

## III. Analysis

### A. Domestic Violence (Count b-3)

Mother contends that there is insufficient evidence to support the court's finding as to count b-3, that the 2007 domestic violence incident placed the children at risk of current physical harm. We agree.

Jurisdiction under section 300, subdivision (b)(1) requires proof that a child "has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor. . . ." "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820, fn. 4, 824.) Thus, domestic violence between a child's parents

10

may support the exercise of jurisdiction only if there is evidence that the violence harmed the children or placed them at risk of harm, and "the violence is ongoing or likely to continue." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717.) Indeed, ongoing domestic violence in the household where children are living, standing alone, "is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194; see also Pen. Code § 13732, subd. (a).)

Here, the record contains evidence that a single incident of domestic violence occurred more than seven years before the hearing. M.W. was an infant at the time, and L.W. was not yet born. Although past abuse or violent behavior may predict future abuse (*In re E.B.* (2010) 184 Cal.App.4th 568, 576), there was no evidence that mother or father engaged in any subsequent altercations, either with one another or with other partners. Nor is there evidence that mother and father lived together, or that father lived with the children, at any point beyond 2012, the last date father stated the children lived with him. M.W. told DCFS that she had never seen anyone hit mother, neither child displayed any signs of physical abuse or neglect, and both children said they had not seen father in a long time. Mother also stated that she and the children had not seen father since July 2013, and father said he had not had contact with the children at least since his arrest in August 2013. None of this evidence suggests even a minimal risk that the children were currently or would subsequently be exposed to domestic violence between mother and father (see *In re Daisy H.*, *supra*, 192 Cal.App.4th at p. 717), particularly where father was incarcerated at the time of the hearing.

Mother's failure to obtain a protective order in response to the 2007 incident likewise did not place the children at a current risk of harm. Even if mother had obtained an emergency protective order, which DCFS suggests was the "appropriate" course of action, it would have expired years before the hearing on the amended 342 petition. (See Fam. Code, § 6256.) DCFS has not cited any authority supporting its implicit contention that mother was obligated to seek an emergency protective order, and we have not located any. We cannot tell from the record before us why mother did not seek an

11

emergency protective order; for all we know, she may have thought doing so was unnecessary because father had been taken into custody. More than mere speculation is required to demonstrate that the children were placed at risk of harm by mother's failure to take an advisable but not mandatory course of action. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)

In any event, mother did take action in response to the incident. She called the police and cooperated with them. The record contains no evidence of further domestic violence incidents and is likewise silent as to any steps mother may have taken to protect herself and the children, or the degree to which she allowed (or did not allow) father to access the children during the next seven years. Count b-3 states that mother "failed to press charges" against father after the incident, but the record is silent as to why charges against father ultimately were not pursued.

DCFS notes that mother did not pursue counseling to help her identify risks associated with domestic violence, but does not point to any authority suggesting that such counseling was necessary to obviate a future substantial risk of harm to the children. Mother's statements in 2014 that father "never hurt my children" and "wouldn't hurt my children" do not alone show that she was unwilling or unable to protect the children. There is no evidence that father ever hurt the children (or hurt mother more than once, seven years earlier), and the record shows that mother was willing and able to seek help when her children were in potentially threatening situations, whether due to father's domestic violence or her own substance abuse.

In short, there is no substantial evidence connecting the single domestic violence incident in 2007 or mother's response to that incident to a risk of current harm to the children. We accordingly strike count b-3, as it is not supported by the evidence and is not necessary to the court's findings of jurisdiction.

**B.      Mother's Knowledge of Father's Criminal History (Counts b-2 & d-2)**

Mother contends that there is insufficient evidence to support the court's finding as to counts b-2 and d-2, that she knew or should have known of father's criminal

12

conduct in 2009 and placed the children at risk of physical abuse (§ 300, subd. (b)) and sexual abuse (§ 300, subd. (d)) by allowing father access to them. We agree.

The dependency court sustained identical counts b-2 and d-2, which, as amended, alleged "In 2009, the children [M.W.] and [L.W.]'s father, Lamar W[.] Sr., sexually assaulted a person. Such sexual assault included, but was not limited to, forced oral copulation under threat of firearm, and forcing the person to orally copulate father Lamar W[.], Sr. under threat of firearm. The mother K[.] [*sic*] G[.] knew or should have known about the father's criminal conduct and yet allowed the father access to the children. Such criminal conduct on the part of the father endangers the children's physical health and safety and places the children at risk of physical harm, damage, danger and sexual abuse."[6] The court did not find that mother knew of father's criminal history; it commented only that she should have known. The court's theory was "If in the count (b) (3) the mother had gone to get a restraining order in 2007, that would have then required a CLETS to be run, and she would have become aware of his registered sex offender status. [¶] So in some ways, it might not be that she knew, but definitely she should have known because, if she had taken appropriate action during the domestic violence incident, it would have generated the criminal history that she would have become aware of."

Nothing in the record suggests that mother was aware of any of father's criminal conduct, the alleged 2009 incident or otherwise. She was surprised when DCFS told her about the 2009 incident, and there is no evidence that father was forthcoming with any such information. To the contrary, he inaccurately characterized his pending charges as "assault" and shared minimal information about his criminal history with DCFS. We therefore focus on whether mother should have known about father's criminal conduct.

As discussed above, we are unaware of any authority requiring a parent to obtain a restraining order in response to a single act of domestic violence. We are likewise

---

[6]     Despite the wording of the sustained allegation, father had not been convicted of any crimes in connection with the 2009 incident at the time of the hearing.

unaware of any authority supporting the court's assertion that a request for a restraining order necessarily would have led to (1) a CLETS search being run and (2) mother thereafter being notified of its results.[7]  Neither the court nor DCFS cited any statutes, regulations, or case law demonstrating that the chain of events described by the court is mandated or even permitted.  We do not view the court's comment as substantial evidence in support of the allegations.  Furthermore, even if the act of obtaining an emergency protective order had triggered a CLETS search, and the subsequent notification of the mother, a search run in 2007 would not have apprised mother of the 2009 "criminal conduct" identified in counts b-2 and d-2, an alleged incident that did not occur in the home or involve a minor.

Law enforcement did not even connect father to the 2009 conduct until 2013, around the time the record reflects mother and the children had their last contact with him.  There is nothing in the record suggesting mother was willfully ignorant of father's alleged criminal conduct, allowed him unfettered access to the children, or failed to protect them prior to that point.  Moreover, nothing inherent in the circumstances surrounding the domestic violence incident – which consisted of a slap to mother's face – should have prompted mother to inquire about father's prior criminal history or caused her to reasonably foresee that father might later sexually abuse the children.[8]  (See *In re*

---

[7]     Section 273.75, subdivision (a) of the Penal Code requires the attorney prosecuting "any charge involving acts of domestic violence as defined in subdivisions (a) and (b) of Section 13700 of the Penal Code or Sections 6203 and 6211 of the Family Code" to conduct a "thorough investigation of the defendant's history" and to present the results "for consideration by the court (1) when setting bond or when releasing a defendant on his or her own recognizance at the arraignment, if the defendant is in custody, (2) upon consideration of any plea agreement, and (3) when issuing a protective order pursuant to Section 136.2 of the Penal Code, in accordance with subdivision (h) of that section."  These obligations appear to accrue upon prosecution of a charge, not upon issuance of an emergency protective order.

[8]     Count d-2 was brought under section 300, subdivision (d), which permits the juvenile court to take jurisdiction over a child when "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her

14

*Savannah M*., *supra*, 131 Cal.App.4th at p. 1395.) In other words, no substantial evidence supports the juvenile court's conclusion that mother should have known of the 2009 incident and that her ignorance placed the children at risk. We therefore strike counts b-2 and d-2, as they are not supported by the evidence and are not necessary to the court's findings of jurisdiction.

**DISPOSITION**

Counts b-2, b-3, and d-2 of the amended 342 petition are stricken. The order is affirmed as modified.

COLLINS, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

---

household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

Filed 7/30/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.W. et al., Persons Coming Under the Juvenile Court Law. | B258054<br><br>(Los Angeles County<br>Super. Ct. No. DK02852) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>K.G.,<br><br>      Defendant and Appellant. | ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on July 6, 2015 and was not certified for publication in the Official Reports. Upon application of appellant and interested parties and for good cause appearing, it is ordered that the opinion shall be published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

_____

WILLHITE, ACTING P.J.          MANELLA, J.          COLLINS, J.