Filed 12/8/20  In re Alize D. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ALIZE D., a Person Coming Under the Juvenile Court Law. | B304214 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ADRIAN D., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP08176A) |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Juvenile Court Referee. Affirmed in part and dismissed in part.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

Adrian D. appeals from the juvenile court's jurisdiction findings and disposition orders declaring his four-year-old child Alize D. a dependent of the court and removing her from his physical custody. Adrian contends that substantial evidence did not support the court's jurisdiction findings under Welfare and Institutions Code section 300, subdivisions (a) and (b),[1] that there were reasonable means to protect Alize without removing her, and that the court abused its discretion in ordering him to complete a domestic violence program and parenting classes and in restricting his visits with Alize. We dismiss the appeal from the juvenile court's findings under section 300, subdivision (a), and otherwise affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Adrian Hits His Girlfriend in Alize's Presence*

On October 31, 2019 Adrian's girlfriend Dulce V. tried to leave Adrian's house to look for a job, but Adrian prevented her from leaving because he thought she was going to cheat on him. When Dulce tried to call her mother, Adrian "snatched" Dulce's phone from her. When Dulce tried to take it back, Adrian punched her in the face, causing her to fall to the ground and bleed from her nose. Dulce walked to a nearby store and borrowed a phone to call the 911 emergency operator. A Los Angeles County Sheriff's deputy arrived and observed "redness, swelling, and dried blood" on Dulce's nose. Dulce told the deputy that Adrian hit her and that "there has been previous history of

---

[1] Statutory references are to the Welfare and Institutions Code.

'[d]omestic [v]iolence,'" but that she had not reported it because she was scared. Dulce said she wanted to leave Adrian's home and had started to pack her belongings because Adrian was "extremely possessive and violent with her." When Dulce said Alize was present during the incident, the deputy contacted the Los Angeles County Department of Children and Family Services.

B.     *The Department Investigates and Files a Petition Under Section 300, Subdivisions (a) and (b), and the Court Detains Alize*

A week later the Department interviewed Adrian about Dulce's report of domestic violence. Adrian told the Department social worker that he and Dulce were arguing and that, when he tried to get her out of the house, she "tripped over a bike onto the table in the dining room." Adrian stated, referring to Dulce, "I just tapped her." Adrian said that Alize "did not see anything," that the deputy "lied about [Dulce] having a busted lip," and that Dulce's face was red because she had an "'ingrown pimple'" on her face. The Department social worker advised Adrian "a plan would need to be put in place to ensure Alize's safety," but Adrian failed to attend the meeting to discuss the safety plan. Adrian also failed to return the social worker's text messages and phone calls.

When the social worker interviewed Dulce, she denied Adrian hit her. She stated that, while she and Adrian were arguing, Adrian pushed her ("not hard"), and she tripped and fell. Dulce explained that she called law enforcement because she was upset, that the deputy mistakenly believed she sustained a bruise on her cheek because Adrian had hit her, and that the bruise "was a result of an 'ingrown pimple.'" Dulce also denied Adrian hit her in the past.

3

The Department filed a petition under section 300, subdivisions (a) and (b), alleging Adrian's violence toward Dulce in Alize's presence "endangers the child's physical health and safety, creates a detrimental home environment, and places the child at risk of serious physical harm, damage, and danger." The juvenile court detained Alize and ordered Adrian to enroll in a "domestic violence treatment" program.

C.    *The Department Investigates Further*

The Department investigated and confirmed Alize witnessed the physical violence. Alize told the Department social worker, "The police took my dad because he was bad. My dad socked Belen in her nose and she was bleeding a lot. I saw him . . . and my tummy started hurting, so my dad told me to go to my room. It was scary." "Belen" was the name Alize used for Dulce.

The Department found out that in July 2019, three months before Dulce reported the domestic violence, Adrian contacted the Department because he was concerned Alize had sustained bruises while in the care of her mother, Ashley R.[2] Ashley explained to the social worker that, when she petitioned in family court for custody of Alize, Adrian called the Department to report his suspicion Alize was being physically and sexually abused while at Ashley's home. Ashley stated that, as a result of the "false allegations of physical and sexual abuse," the family court gave Adrian temporary custody of Alize and required all visits with Ashley to be monitored until the next hearing, which did not

---

[2]    Ashley is not a party to this appeal.

4

take place because Adrian failed to appear.[3] Alize denied all of Adrian's allegations, and the Department closed the July 2019 referral from Adrian.

In its report for the jurisdiction and disposition hearing, the Department questioned Adrian's credibility "regarding his concerns" Ashley physically abused Alize, observing that, "despite [Adrian's] concerns, he would allow [Alize] to have long periods of unmonitored contact with her mother Ashley." The Department also stated that it had "continued efforts to provide services to the family . . . and provided referrals" and that, although Adrian said he was willing to participate in services, as of December 27, 2019 he had been "unable" to enroll in any classes.

D.    *The Juvenile Court Asserts Jurisdiction over Alize and Removes Her from Adrian*

On January 8, 2020 the juvenile court held a hearing on the Department's petition. Adrian testified that the allegations were false because the deputy who arrested him "used excessive force" and that, when Adrian said he was going to report him, the deputy told Adrian "he was going to send [the Department] . . . to remove [Alize]." Adrian stated that, even assuming Alize's statements were true, "this was a one-time incident." The court rejected Adrian's argument his physical altercation with Dulce was an isolated incident because, the court concluded, Dulce "reported to the police there has been domestic violence in the past" and her statement "closest [in time] to the incident is most credible." The court found that there was an "ongoing risk" to Alize because Adrian failed to take responsibility for his conduct

---

[3]    After the Department filed the petition in this case, the family court continued the custody matter pending the juvenile court's ruling on the petition.

5

and that Dulce was "recanting because of her fear."  The court
sustained the allegations in the petition and declared Alize a
dependent of the court under section 300, subdivisions (a) and (b).

As for disposition, Adrian argued the court should not
remove Alize from his custody because the court could order
Adrian not to have Dulce in his home while Alize was present.
The Department argued the court should remove Alize from
Adrian and place her with Ashley.  The Department explained it
investigated Adrian's allegations that led to the temporary
custody order in family court and "did not find any supporting
evidence of those allegations."

The court found by clear and convincing evidence that
leaving Alize in the home of Adrian "would pose a substantial
danger to [her] physical health, safety, protection, and emotional
well-being, given [Adrian's] failure to address domestic violence,
failure to be forthcoming, putting a four-year-old in the middle of
a custody battle, making false allegations, [and] failing to
acknowledge the power and control dynamics."  The court also
found that "the Department has provided reasonable means to
prevent removal," but that, in light of the court's findings (which
included Adrian's failure to address the domestic violence), "no
reasonable means exist[ed]" to protect Alize without removal.
The court removed Alize from Adrian and placed her with Ashley.
The court ordered Adrian to complete a 52-week domestic
violence program, participate in individual counseling sessions,
and attend parenting classes because Adrian had "chosen to put a
four-year-old in the middle of a custody battle and continues to be
inappropriate."  The court ordered monitored visitation for
Adrian.  Adrian timely appealed.

6

## DISCUSSION

A. *Substantial Evidence Supported the Jurisdiction Finding Under Section 300, Subdivision (b)*

1. *Applicable Law and Standard of Review*

Section 300, subdivision (b)(1), authorizes the juvenile court to assert jurisdiction where the child protective agency proves the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (See *In re J.M.* (2019) 40 Cal.App.5th 913, 921; *In re M.W.* (2015) 238 Cal.App.4th 1444, 1453.) The Department "has the burden of proving by a preponderance of the evidence" that the child is a dependent of the court under section 300. (*In re I.J.* (2013) 56 Cal.4th 766, 773; see *In re M.W.*, at p. 1453.)

"'While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm.' [Citation.] Thus, domestic violence between a child's parents may support the exercise of jurisdiction only if there is evidence that the violence harmed the children or placed them at risk of harm, and 'the violence is ongoing or likely to continue.'" (*In re M.W.*, *supra*, 238 Cal.App.4th at pp. 1453-1454.) However, "'[t]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773; see *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["The focus of section 300 is on averting harm to the child."].)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings . . . , we determine if

7

substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.]  . . . "'"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].""'"  (*In re I.J.*, *supra*, 56 Cal.4th at p. 773; see *In re R.T.* (2017) 3 Cal.5th 622, 633; *In re M.W.*, *supra*, 238 Cal.App.4th at p. 1453.)

> 2.    *Substantial Evidence Supported the Jurisdiction Finding Under Section 300, Subdivision (b)*

Adrian contends substantial evidence did not support the finding Alize came within section 300, subdivision (b), "because at the time of the hearing, she was not at risk."  Adrian is incorrect.

Substantial evidence supported the juvenile court's finding that domestic violence was an ongoing problem in Adrian's home and posed a substantial risk of serious physical harm to Alize. Both Alize and Dulce recounted Adrian's assault on Dulce that left her bleeding on the ground.  Alize easily could have been "'accidentally hit by a thrown object, by a fist, arm, foot or leg.'" (*In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7 (*O.B.*).)  And witnessing the incident of domestic violence caused Alize to experience symptoms, including fear and stomach pain.  (See *In re V.L.* (2020) 54 Cal.App.5th 147, 156 ["Even if a child suffers no physical harm due to domestic

violence, a 'cycle of violence between . . . parents constitute[s] a failure to protect [a child] "from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.""""]; *In re R.C.* (2012) 210 Cal.App.4th 930, 941 [same].)

Moreover, although Dulce recanted her statement Adrian had been violent with her in the past, her actions belied her retraction. Dulce tried to call her mother during her argument with Adrian, which suggested she feared the argument would turn violent. Dulce also packed her belongings to leave Adrian because, as she reported to law enforcement, this was not the first time Adrian tried to control her with violence. Significantly, notwithstanding her prior suggestion she might leave the abusive relationship, Dulce reconciled with Adrian, which increased the risks that Adrian would again become angry with Dulce and resort to violence and that Alize would be in danger. (See *In re R.C., supra,* 210 Cal.App.4th at p. 942 ["""past violent behavior in a relationship is 'the best predictor of future violence""""]; *In re E.B., supra,* 184 Cal.App.4th at p. 576 [the mother's "record of returning to [the father] despite being abused by him, supports the juvenile court's finding that her conduct in the domestic altercations endangered the children"].) And Adrian's insistence the incident "was just an argument," as well as his failure to acknowledge the risk his conduct posed to Alize, further supported the jurisdiction finding. (See *In re V.L., supra,* 54 Cal.App.5th at p. 156 ["A parent's denial of domestic violence increases the risk of it recurring."]; *In re John M.* (2013) 217 Cal.App.4th 410, 418-419 [in evaluating the risk of harm to the child, the juvenile court may consider "evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child"].)

9

Adrian argues that, because "Dulce stated that the information in the police report was incorrect," there was "no substantial risk to Alize based on the isolated incident." The juvenile court, however, found Adrian's denials and Dulce's "minimization" were not credible. Instead, the court credited Dulce's statements to law enforcement, made shortly after Adrian hit her, that she and Adrian had a history of domestic violence and that she did not report any of the other incidents because she was afraid. We defer to the juvenile court's credibility determinations. (See *In re I.J.*, *supra*, 56 Cal.4th at p. 773 ["'"[w]e do not reweigh the evidence"'"]; *Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 865 ["We . . . may not substitute our deductions for those of the juvenile court."].)

B.     *The Appeal from the Jurisdiction Findings Under Section 300, Subdivision (a), Is Not Justiciable*

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.'" (*In re I.J.*, *supra,* 56 Cal.4th at p. 773; accord, *In re Madison S.* (2017) 15 Cal.App.5th 308, 328-329.) "We nonetheless retain discretion to consider the merits of a parent's appeal [citation], and often do so when the finding '(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction."'" (*In re M.W.*, *supra,* 238 Cal.App.4th at p. 1452; see *In re Madison S.*, at p. 329; *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

10

It is not appropriate to exercise that discretion here. Adrian does not argue the jurisdiction finding under section 300, subdivision (a), served as the only basis for the disposition orders he challenges. As we will discuss, the jurisdiction finding under section 300, subdivision (b), provides an independent and sufficient basis for the juvenile court's disposition orders. Therefore, even if we were to reverse the jurisdiction findings under section 300, subdivision (a), we could not grant Adrian any effective relief. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491, 1495 [dismissing a father's appeal as nonjusticiable because "any order we enter will have no practical impact on the pending dependency proceeding, thereby precluding a grant of effective relief"]; cf. *In re D.M.* (2015) 242 Cal.App.4th 634, 639 [exercising discretion to review an otherwise moot appeal from a jurisdiction finding because "the court's order requiring [the] mother to attend parental education and individual counseling . . . hinge on the validity of the jurisdictional finding against her" under section 300, subdivision (a)].) Adrian's conclusory assertions (without referring to any specific finding) that the "[j]urisdictional findings could affect this dependency proceeding or a future dependency proceeding" and that "'refusal to address . . . jurisdictional errors on appeal . . . has the undesirable result of insulating erroneous or arbitrary rulings from review'" are too speculative to justify exercising discretion to review the jurisdiction finding under section 300, subdivision (a). (See *In re I.A.*, at pp. 1494-1495 ["[a]lthough raising the specter of a future impact, [the father] . . . fails to suggest any way in which [the jurisdiction finding] actually could affect a future dependency or family law proceeding"].)

C.    *Substantial Evidence Supported the Order Removing Alize from Adrian*

1.    *Applicable Law and Standard of Review*

Section 361, subdivision (a), provides in relevant part:  "In all cases in which a minor is adjudged a dependent of the court on the ground that the minor is a person described by Section 300, the court may limit the control to be exercised over the dependent child by any parent."  Section 362, subdivision (a), "amplifies" this provision by authorizing the court to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child."  (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 346.)  Thus, "[i]n making its disposition orders the court has broad discretion to resolve issues regarding the custody and control of the child, including deciding where the child will live while under the court's supervision."  (*Ibid.*)

Section 361, subdivision (c)(1), provides that a "dependent child shall not be taken from the physical custody of his or her parents, . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence" that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's physical custody."  (See *In re V.L., supra*, 54 Cal.App.5th at p. 154 ["To remove a child from parental custody, the court must make one of five specified findings by clear and convincing evidence."]; *In re D.P.* (2020) 44 Cal.App.5th 1058, 1065 [same].)  "'"Clear and convincing" evidence requires a finding of high probability.'"  (*In re V.L*, at p. 154.)  "Actual harm to a child is not necessary before a child can be removed.  'Reasonable

apprehension stands as an accepted basis for the exercise of state power.'" (*Ibid*.) "The court may consider a parent's past conduct as well as present circumstances" in deciding whether to remove a child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 170.)

"In general, when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*O.B.*, *supra*, 9 Cal.5th at p. 1005; see *In re V.L.*, *supra*, 54 Cal.App.5th at p. 149 [in reviewing the disposition orders removing the minors from the father, "we heed the holding of [*O.B.*] establishing that when a statute requires a fact to be found by clear and convincing evidence, and when there is a substantial evidence challenge, the reviewing court must determine whether the record contains substantial evidence from which a reasonable trier of fact could find the existence of that fact to be highly probable"].) "In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*O.B.*, at pp. 1011-1012; see *In re V.L.*, at p. 155.)

2.    *Substantial Evidence Supported Removal*

Adrian contends that, even if we affirm the jurisdiction findings, "the disposition findings should be reversed" because "[t]here were reasonable means to protect Alize in the home of [Adrian]," such as ordering Dulce "not [to] be present in the home with [Adrian] and Alize," in-home services to support Alize, or counseling for Dulce. The juvenile court reasonably rejected any

13

proposal short of removing Alize because the Department demonstrated Adrian could not be trusted to protect Alize from harm. As discussed, the court found Adrian's testimony was "not credible." Adrian still maintained that Dulce never told the deputy he physically abused her and argued instead that the deputy falsified the report of abuse because Adrian threatened to make an excessive force report. Adrian also continued to maintain that Dulce suffered a bruise on her face by tripping over a bike, which the juvenile court disbelieved, and that Dulce's bruise was an "ingrown pimple." And despite Adrian's representation to the court he was "willing . . . to participate in whatever he needs to in order to have [Alize] in his custody," he never met with the social worker to put a safety plan in place for Alize or enrolled in any of the classes the court ordered him to attend.

As discussed, Adrian failed to accept any responsibility for the incidents of domestic violence, failed to appreciate how that violence put Alize at risk, failed to cooperate with the Department, and failed to comply with any part of his case plan. Substantial evidence supported the juvenile court's finding by clear and convincing evidence that Adrian's violent tendencies posed a substantial risk of harm to Alize and that there were no reasonable means to protect Alize except by removing her from Adrian's custody. (See *In re V.L.*, *supra*, 54 Cal.App.5th at pp. 156-157 [reasonable trier of fact could have found it highly probable that "there were no reasonable means to protect [the] minors without removal from [their] father's physical custody" because "[t]he inference from [the father's] denial [of domestic violence] is that he is less likely to change his behavior in the future," which "increases the risk of [the violence] recurring"]; *In re T.V.*, *supra*, 217 Cal.App.4th at pp. 136-137 [father's denial of responsibility supported the juvenile court's finding that the child

14

"was at substantial risk of harm as a result of the parents' ongoing domestic violence and there were no reasonable means by which she could be protected without removal"]; *In re Heather A.* (1996) 52 Cal.App.4th 183, 196 [rejecting a father's argument that the juvenile court could have allowed him to retain custody of his children "'on the condition that [he] not invite a domestic partner into the home with the minors'" because "there [was] no indication that [the father's] violent, abusive tendencies [were] only limited to 'domestic partners,' and not to other women to whom the minors might be exposed"]; cf. *In re Ashly F.* (2014) 225 Cal.App.4th 803, 810 ["[a]mple evidence existed of 'reasonable means' to protect [the children] in their home," given the mother's expression of remorse and enrollment in a parenting class].)

D. *The Juvenile Court Did Not Abuse Its Discretion in Ordering Adrian To Complete a Domestic Violence Program and Attend Parenting Classes*

Adrian contends the court's order requiring him to complete a 52-week domestic violence program "was cumulative" because the court ordered his individual counseling to address domestic violence issues. Adrian also contends there was "no evidence to support a finding that [he] was in need of a parenting class" because "Alize was not brought before the court based on any deficiencies in [Adrian's] parenting." Neither contention has merit.

The juvenile court has "'wide latitude'" in formulating reasonable disposition orders for the care, custody, support, and well-being of dependent children. (*In re K.T.* (2020) 49 Cal.App.5th 20, 24; see § 362, subd. (a); *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.) The juvenile court "'may direct any and all reasonable orders to the parents or guardians of the child

15

who is the subject of any [dependency] proceedings . . . as the court deems necessary and proper to carry out this section,' including orders 'to participate in a counseling or education program.'" (*In re Daniel B.*, at p. 673.) In addition, "'[t]he program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.'" (*In re K.T.,* at p. 24; see § 362, subd. (d).)

"The court's broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings." (*In re K.T.*, *supra*, 49 Cal.App.5th at p. 25; see *In re Briana V.* (2015) 236 Cal.App.4th 297, 311 ["At disposition, the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children. [Citations.] Instead, the court may consider the evidence as a whole."].) "We review the juvenile court's disposition case plan for an abuse of discretion." (*In re D.P.*, *supra*, 44 Cal.App.5th at p. 1071; see *In re K.T.*, at p. 25.)

The juvenile court did not abuse its discretion in ordering Adrian to complete a domestic violence program in addition to participating in individual counseling that included counseling on domestic violence. The record supports the court's conclusion that both were reasonably necessary to protect Alize. As discussed, at the time of the hearing, Adrian had not acknowledged that he injured Dulce in front of Alize, that he physically abused Dulce in the past, or that the ongoing domestic violence put Alize at substantial risk of harm. Also, as discussed,

16

since the Department first advised him about the need for a safety plan for Alize in early November 2019, Adrian did not do anything to address his history of domestic violence with Dulce. Indeed, Adrian refused to sign the case plan the court ordered at the disposition hearing two months later. Adrian does not argue the domestic violence program or the individual counseling sessions were not "designed to eliminate the conditions that led to the dependency." (*In re Daniel B.*, *supra*, 231 Cal.App.4th at pp. 674-675.) Nor could he: Both the domestic violence program and the individual counseling will help Adrian understand and address his need for what the court described as "power and control" in his domestic relationships. (See *ibid.* ["Based on the history of domestic violence in the home and the seriousness of the altercation that led to [the] dependency proceedings, [the mother] has failed to show an abuse of discretion in the type of domestic violence program selected by the juvenile court."]; see also *In re D.P.*, *supra*, 44 Cal.App.5th at pp. 1071-1072 [juvenile court did not abuse its discretion in ordering the mother to participate in "a full drug and alcohol program with aftercare as well as a 12-step program" because the record showed the mother "had persistent issues with alcohol that contributed to dangerous manic episodes in [her child's] presence"].)

Nor did the juvenile court abuse its discretion in ordering Adrian to attend parenting classes. As discussed, the juvenile court may make orders necessary to address deficiencies in Adrian's parenting to protect and promote Alize's welfare, even if Adrian's deficient parenting skills did not give rise to the dependency proceedings. (See *In re K.T.*, *supra*, 49 Cal.App.5th at p. 25.) The court found Adrian put Alize "in the middle of a custody battle." Adrian exercised poor judgment in some of the parenting decisions he made: He either made false allegations of abuse against Ashley in order to gain full custody of Alize, which

created instability for Alize, or, if Adrian sincerely believed Alize had been abused at Ashley's house, he knowingly put Alize in harm's way by continuing to drop Alize off at Ashley's house after the family court awarded him temporary custody. In addition, Adrian lacked insight into how domestic violence in the household harmed Alize. Parenting classes will help Adrian appreciate the need for him to stop the violence, not only because it is wrong, but because of the negative consequences for Alize. (Cf. *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 790 [expressing concern about a parent's "grasp of the important parenting concepts–things such as a child's need for . . . freedom from violence"].)

Adrian's citation to *In re Jasmin C.* (2003) 106 Cal.App.4th 177 and *In re Drake M.*, *supra*, 211 Cal.App.4th 754 does not help him. *In re Jasmin C.* involved a disposition order requiring a nonoffending parent, who "did not abuse her children, fail to protect them, or engage in any other inappropriate behavior," to attend parenting classes. (*In re Jasmin C.*, at pp. 180-181.) *In re Drake M.* involved a disposition order requiring a father to submit to random drug testing and to participate in drug counseling and parenting courses, even though nothing in the record indicated he had a substance abuse problem or lacked parenting skills. (*In re Drake M.*, at p. 770.) In contrast, the record here contained evidence Adrian did not understand that his ongoing domestic violence with Dulce and his ill-conceived plan to use Alize as the means to gain an advantage in family court harmed Alize.

E. *The Juvenile Court Did Not Abuse Its Discretion in Ordering Monitored Visits*

Section 362.1, subdivision (a)(1)(A), provides in part, "Visitation shall be as frequent as possible, consistent with the

18

well-being of the child." "The power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent an abuse of discretion." (*In re D.P.*, *supra*, 44 Cal.App.5th at p. 1070.) As discussed, the juvenile court found that the ongoing domestic violence posed a substantial risk of physical harm to Alize and that there were no reasonable means to protect Alize except by removing her from Adrian's physical custody. The same substantial evidence that supported the court's jurisdiction finding under section 300, subdivision (b), and the removal order under section 361, subdivision (c)(1), supported the court's order for monitored visitation. (See *In re D.P.*, at p. 1070 [even though the mother participated in counseling and tested clean for alcohol, substantial evidence supported the juvenile court's "implicit determination that unmonitored visitation could place [the child] at risk"]; see also § 362.1, subd. (a)(1)(B) ["[n]o visitation order shall jeopardize the safety of the child"].)

Adrian argues requiring a monitor to supervise his visits will reduce their frequency. Adrian, however, does not cite any evidence to support this assertion. The juvenile court did not abuse its discretion in ordering monitored visitation until Adrian takes steps to address the issues identified in his case plan. (See *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284 ["[g]iven [the] father's recent drug use and his efforts to keep that information from [the Department] and the court, we cannot say the juvenile court abused its discretion in requiring monitored visits"].)

## DISPOSITION

The jurisdiction finding under section 300, subdivision (b), and the disposition orders are affirmed.  The appeal from the jurisdiction finding under section 300, subdivision (a), is dismissed as nonjusticiable.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.