Filed 3/24/22  In re M.I. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.I. et al., Persons Coming Under the Juvenile Court Law. | B314906 (Los Angeles County Super. Ct. No. 21CCJP01315A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSE I.,<br><br>        Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of Los Angeles County.  Martha Matthews, Judge.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Amir Pichvai for Plaintiff and Respondent.

\* \* \* \* \* \*

Jose I. (father) appeals the juvenile court's orders exerting jurisdiction over his two young children and removing them from his custody.  Because the juvenile court's orders are supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Father and Elizabeth M. (mother) met in 2014 when mother was 15 years old.  They are not married, but have been a couple since 2016.

Their relationship is tumultuous.  Father is possessive of mother and engages in conduct aimed at controlling her:  He worries when mother leaves the apartment they share without telling him where she is going, suspects mother is lying to him about her destinations, and sometimes takes mother's keys or her cell phone away from her to prevent her from leaving.  He would get upset when mother was "disobedient" to him.

Mother and father had their first child, M.I., in December 2018.

In February 2020, father got physical with mother.  While they were doing laundry, and while M.I. was with them, father pushed mother to the ground, causing her to cut her lip.  Father

2

then grabbed M.I. and fled the scene with him. Father was arrested, and M.I. was recovered. Father pled no contest to misdemeanor battery and was placed on three years of probation, including a requirement that he attend a 52-week domestic violence course.

Father defiantly refused to enroll in the domestic violence course, proclaiming that—despite his plea—he "did not believe there was any domestic violence between himself and mother." When father violated a court order to appear in criminal court to show proof of his enrollment, the court issued a bench warrant for father's arrest.

Mother gave birth to their second child, J.I., in March 2021. Mother and J.I. tested positive for amphetamines at the time of the birth.

## II. Procedural Background

In March 2021, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over M.I. and J.I. As pertinent here, the Department alleged that dependency jurisdiction was warranted under Welfare and Institutions Code section 300,[1] subdivision (b) due to (1) the domestic violence between father and mother, (2) the positive drug result for mother and J.I. at the time of J.I.'s birth, and (3) mother's history of drug abuse—all of which placed the children at "substantial risk" of "serious physical harm."[2]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The Department also alleged that jurisdiction was warranted (1) under section (b) of section 300 due to (a) father's abuse of marijuana and (b) mother's sister's use of

When interviewed by the Department, mother seemed to "cover" for father. She claimed he never uses marijuana while father freely admitted using marijuana in the evenings while he is at home. More troubling is the fact mother minimized father's domestic violence claiming "[i]t wasn't that bad." She reported that her injury in February 2020 involved nothing more than father "pull[ing]" on her, at which point she "fell back onto the ground" and suffered an injury so minor she did not even realize she was bleeding. And she also reported that father had completed the entire 52-week domestic violence course.

When interviewed by the Department, father issued angry threats. In March 2021, father cursed at a Department social worker and told her he was not going to talk to any judge about custody of his children. The following month he told another Department social worker that she should stay away from his children "so I don't have to get involved with yours."

In mid-2021, father enrolled in parenting and domestic violence classes at the Department's request.

The juvenile court held a combined jurisdictional and dispositional hearing in August 2021. The court sustained jurisdiction. In sustaining the domestic violence allegation, the court acknowledged that the February 2020 incident was "over a year ago" and that father was "taking a class." But the court found that the risk of domestic violence—and hence the risk of physical harm to the children—was still high: Specifically, the

---

methamphetamine (because she lived with the family), and (2) under subdivision (a) due to the domestic violence. The juvenile court did not sustain these allegations, so we will not discuss them further.

4

court found that father has engaged in a "pattern" of using anger and intimidation to control mother, that this pattern of "unhealthy and unsafe behavior" in their relationship is a type of domestic violence even though it has "fortunately" flared into "hitting" only once, and that father's pattern "hasn't changed" in light of his refusal to take his criminal court-ordered domestic violence classes and the fact that the parents still have "a lot of drama" in their relationship. Based on the same findings, the court also removed the children from father's custody and ordered the Department to provide reunification services to both parents.

Father filed a timely notice of appeal.

## DISCUSSION

Father argues that the juvenile court's exertion of dependency jurisdiction based upon father's domestic violence is unsupported by substantial evidence, such that this basis for jurisdiction must be vacated, and that father—as a nonoffending parent—should be given custody of M.I. and J.I.[3] Because father levels no further attack on the court's removal order, this appeal turns on whether there is substantial evidence to support the domestic violence finding.

Among other grounds, a juvenile court may exert dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of

---

[3] Although the juvenile court's dependency jurisdiction over M.I. and J.I. is also supported by the wholly separate allegations regarding mother's drug use, we nevertheless exercise our discretion to entertain father's appeal because the viability of the domestic violence allegation is what determines whether father is an offending or nonoffending parent. (See *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.)

5

the child's parent . . . to adequately supervise or protect the child." (§ 300, subd. (b)(1).) Exposing a child to domestic violence can constitute a failure to protect a child from the risk of serious physical injury under this provision. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.) Because dependency jurisdiction turns on the risk to the child ""at the time of the [jurisdictional] hearing""" (*In re M.M.* (2015) 240 Cal.App.4th 703, 719 (*M.M.*)), the propriety of jurisdiction due to a child's exposure to domestic violence turns on whether "the violence is ongoing or likely to continue." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717; *In re M.W.* (2015) 238 Cal.App.4th 1444, 1453.) We review the juvenile court's factual findings regarding risk, like all of its factual findings, for substantial evidence. (*M.M.*, at pp. 719-720.) This means we review the evidence in the light most favorable to the juvenile court's findings. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384, superseded by statute on other grounds as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322.)

The juvenile court's finding that, as of the date of the jurisdictional hearing, the domestic violence between father and mother was likely to continue (thereby continuing to pose a substantial risk of serious physical harm to M. I. and J. I.) was supported by substantial evidence. As recently as the month before the jurisdictional hearing, father was still attempting to control mother by taking away her means of leaving their dwelling (that is, taking her keys and her cell phone). He was also criticizing her for being "disobedient." "[A] '"power and control" dynamic . . . is often at the core of domestic violence.'" (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 506.) Indeed, as our Legislature noted in enacting Evidence Code section 1109, that dynamic—once it exists—continues to exist unless addressed,

6

even if it does not always flare up into violence: "[T]here [is] a great likelihood that any one battering episode is part of a larger scheme of dominance and control . . . ." (*People v. Quintanilla* (2020) 45 Cal.App.5th 1039, 1058.) Here, there is ample evidence that father has anger management, control, and dominance issues, which form the basis of a relationship floundering on the rocks of domestic violence. What is more, father's steadfast— and, indeed, strident—refusal to acknowledge or address his issues only adds to the risk that the domestic violence cycle will continue and once again flare into physical violence. (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"].) Father's enrollment in some classes is a first step, but at the time of the jurisdictional hearing, he had yet to complete any program.

Father raises three arguments in response.

First, father argues that there is no longer any risk to the children because this case involved a single incident of domestic violence 18 months prior to the jurisdictional hearing, and where he only injured mother—but not the children. This argument ignores that risk of additional flare ups into violence still exists in light of father's continued efforts to control and dominate mother (cf. *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 [sole domestic violence issue seven years before dependency petition was filed when children not present; no current risk]), and ignores that a juvenile court need not wait until a child is physically injured to intervene where, as here, the *risk* of such injury is established (*In re Kadence P.*, *supra*, 241 Cal.App.4th at p. 1383; *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993).

7

Second, father argues that the juvenile court's ruling is impermissibly based on a view of what a proper "parenting style" is, as was prohibited in *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789. We disagree. Unlike *David B.*, the juvenile court was not exerting jurisdiction because father did not satisfy the court's subjective view of what constituted "ideal" parenting skill. Instead, the court here exerted jurisdiction because father's conduct was a textbook case of conduct in the midst of a domestic violence cycle that, if unaddressed, was likely to result in further violence toward mother and, given father's willingness to attack mother with the children around, a substantial risk of serious physical harm to the children.

Lastly, father argues that *In re Isabella F.* (2014) 226 Cal.App.4th 128 (*Isabella F.*) dictates a different result. Again, we disagree. In *Isabella*, the court ruled that dependency jurisdiction was not warranted when a mother got into a physical fight with her teenage daughter on one occasion, and thereafter made efforts to address the underlying causes for their relationship difficulties. (*Id.* at pp. 131-135.) This is a very different case. It does not involve a parent's attempts to scold a child, but rather father's attempt to control and dominate his romantic partner as part of a pattern of domestic violence that the father has thus far chosen not to acknowledge or address.

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST