Filed 5/19/16  In re A.M. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.M. et al., Persons Coming Under the Juvenile Court Law. | B262340 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>R.N.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK08001) |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Reversed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

————————————

## INTRODUCTION

Mother, R.N., appeals from the order of the juvenile court declaring her two daughters, A.M. (age 12) and T.M. (age 9), dependents of the court because of inappropriate discipline (Welf. & Inst. Code, §§ 300, subds. (a), (b), (j) & 360, subd. (b)).[1] We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The referral*

Mother was a registered nurse in Indiana. She has no criminal history, gang affiliation, or prior involvement with the Department of Children and Family Services (the Department). Nor does she have any past or present substance abuse issue. She planned to move from Indiana to California in late October 2014, and sent her daughters ahead to live with their maternal grandparents in Los Angeles so that they could start school at the beginning of the academic year.

In October 2014, the Department received a referral indicating that T. tried to strangle herself at school with her sweater. She stated that " 'I do not want to be around anymore,' " and " 'I want to hurt myself.' " T. stated she missed her mother and felt sad because the previous night her grandfather hit her on the knees and butt with a belt. After the grandfather hit her, the grandmother gave T. a hug.

The school psychiatrist, the social worker, and staff from the Department of Mental Health-PMRT evaluated T. and could neither confirm nor negate physical abuse, but decided to put the child on a hold at Harbor UCLA Medical Center because the grandmother declined to come to the school, preferring instead that mother address the problem.

The day after the referral, T. showed no emotion and appeared "disconnected." The social worker found linear bruising on T.'s knees. Otherwise, T. had no visible marks.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

2. *The family's statements*

The grandmother, described by A. as "very religious and strict," admitted using physical discipline when the children misbehaved, but denied abusing them. The grandmother used a spatula to spank T.; she did not use a hand because "the hand is used for love." She spanked T. for discipline and with no intent to hurt the child. She only punished the children when they were irresponsible or acted out. The 18-year old aunt Sierra also hit T.

The grandfather believed that T. was a habitual liar and spanked her with a belt. He always warned her first. He reported that he " 'beat the heck out of' " mother when she was a child because mother was a "problem child." Mother gave him permission to " 'whoop[]' " the children " 'on the butt.' " The grandfather drank alcohol and cussed at the grandmother. The grandmother denied the drinking caused problems at home. The grandfather was arrested for driving under the influence in 2006.

A. was not afraid to live with her grandparents, with whom she always felt safe and comfortable. A. was never disciplined or spanked. In contrast, mother had to spank T. at least once a day because T. was "whiney," *but mother only used her hand*. A. denied that anyone left abrasions or marks on T. and did not remember the grandparents ever hitting T. hard. A. was an excellent student.

T. did not like living in California. She felt abandoned by mother and missed her friends in Indiana. She did not want to get up in the morning or go to school. To act out, T. hit other students' bookbags and desks. Her teacher sent T. home with daily notes indicating whether T. had a good or a bad day. The grandmother spanked T. on the butt if she had a bad day, but did not leave marks. T. refused to talk to the investigating social worker. T. was an excellent student.

T.'s behavior was out of character. Both mother and grandmother reported that T. had a tendency to be dramatic when she got into trouble, and she had difficulty with change. The child pulled stunts to try to get out of school.

The principal of T.'s school explained that the child missed mother "terribly" and hated California. Feeling powerless to change things, T. disconnected herself

3

emotionally. T. vacillated between crying, angry, and happy, which fluctuation, the principal opined, was appropriate for the child's developmental age. She stated that the sweater incident was T.'s " 'cry for help.' "

Mother explained that corporal discipline is permitted in Indiana provided it does not cause marks or bruises. She " 'whoop[ed]' " or spanked T. " '[m]aybe once a month' " but the spanking " 'wasn't excessive.' " Mother declared that her children were not at risk of any harm and she would not allow her children to be put in a situation where they would be victims of abuse. She insisted that the grandmother was not abusive toward the children. Mother was under the impression that the grandparents only hit T. twice, and only after other forms of discipline did not work. Mother thought that the grandparents provided a loving home with lots of food and supervision.

Mother knew that grandfather drank, stating " 'he is probably drinking now.' " However, she asserted that he was not an abuser of alcohol and did not have a thirty-year history of substance abuse. He was not an aggressive, obnoxious drunk. Rather, he occasionally drank, watched TV, and went to sleep. Although mother was scheduled to move to Los Angeles in two weeks, she suggested that T. return to Indiana and move west with her.

3. *The detention*

Mother came from Indiana and appeared at the detention hearing, the week after the referral. The juvenile court ordered the children detained and released to mother on the condition that the three move in with maternal great-grandmother, Anne N. The court ordered family maintenance services, monitored visitation for the grandparents, and directed mother to enroll in a parenting class "immediately."

Mother immediately enrolled in parenting education and cooperated with the Department. Mother had not " 'whoop[ed]' " T. since relocating to California. The children were healthy and comfortable in mother's presence.

4. *The jurisdiction and disposition*

In its report filed in advance of the jurisdiction hearing, the Department related that the children were "doing well" in mother's care and the social worker saw no

4

concerns. The Department approved mother as a monitor for the grandparents' visits. T. was in individual counseling. Mother was scheduled to complete her parenting class within the month. Both children underwent a mental health screen and neither was prescribed psychotropic medication. Both girls missed their grandparents.

Despite this progress, the Department did not recommend informal supervision in lieu of taking jurisdiction (§ 301). The Department reasoned that mother gave the grandparents permission to "physically abuse[]" the children; T. was only seven years old when she wanted to hurt herself "owing to her family situation" and was sad because her grandparents hit her with objects. Also, the family had yet to begin individual counseling. Instead, the Department recommended that the petition be sustained and that the juvenile court order a disposition pursuant to section 360, subdivision (b). The Department explained that mother had complied with the condition that she remain in Anne N.'s house. The grandparents had only monitored contact with the children. And, mother was cooperative with the Department and with the WRAP services T. was receiving.

The juvenile court sustained the petition, which as amended alleged that: (1) On prior occasions the children's mother "inappropriately disciplined [T.] by striking the child with a belt and a spoon. Such inappropriate[] discipline was excessive and caused the child unreasonable pain and suffering." (Counts a-1, b-1, and j-1.) (2) Mother made an inappropriate plan for the children's care and supervision in that mother left the children in the care of the maternal grandparents, who inappropriately physically disciplined the children by striking them with a belt and spatula. T. sustained an abrasion and marks and bruising on her knee. The aunt struck T. with a spatula. Mother instructed the grandfather to physically discipline the children. (Count b-2.) (3) Mother made an inappropriate plan for the children's care and supervision in that the mother left the children in the care of the maternal grandfather who mother knew has a 30-year history of substance abuse and is a current abuser of alcohol. (Count b-3.) (§ 300, subds. (a), (b), (j).)

5

As for disposition, the juvenile court proceeded pursuant to section 360, subdivision (b). Mother appealed.

## CONTENTIONS

Mother contends that the jurisdiction order was not supported by the evidence and the juvenile court lacked authority to make the disposition order.

## DISCUSSION[2]

1. *Standard of review*

At the jurisdiction hearing, the juvenile court applies the preponderance of the evidence standard to determine whether a child is described by section 300. (§ 355, subd. (a); *In re Isabella F.* (2014) 226 Cal.App.4th 128, 137.) " ' "When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]" ' [Citation.] While substantial evidence may consist of inferences, such inferences must rest on the evidence; inferences that are the result of speculation or conjecture cannot support a finding. [Citation.]" (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1258-1259.) Hence, "[s]ubstantial evidence does not mean 'any evidence,' . . . and we ultimately consider whether a reasonable trier of fact would make the challenged ruling in light of the entire record. [Citation.]" (*In re Isabella F.*, *supra*, at p. 138.)

---

**2** The Department moved to dismiss this appeal as moot, noting that while mother's appeal was pending, the juvenile court dismissed the petition. (§ 360, subd. (b) [juvenile court may order services without adjudicating the child a dependent].) We denied the motion and address the appeal because, as mother argues, the court sustained the petition and so dismissal of the appeal would operate as an affirmance of the underlying judgment or order and there remains a possibility of adverse collateral consequences. (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548.)

6

2. *The record does not support a finding* mother *inappropriately disciplined T. or A.*

A child comes within section 300, subdivision (a) when he or she "suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (§ 300, subd. (a).)

However, the statute specifies that " 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury." (§ 300, subd. (a).) "[A] parent has a right to reasonably discipline [a] child and may administer reasonable punishment without being [held] criminally liable." (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 86.) The *Gonzalez* court stated, "We cannot say that the use of a wooden spoon to administer a spanking necessarily exceeds the bounds of reasonable parental discipline. . . . '[I]t is not unlawful for a parent to spank a child for disciplinary purposes with an object other than the hand . . . ,' provided that 'the punishment [is] necessary and not excessive in relation to the individual circumstances.' [Citations.]" (*Id*. at p. 92.)

The allegations sustained by the juvenile court were that "[o]n prior occasions . . . *mother* . . . inappropriately disciplined the child T[.] by striking the child with a belt and a spoon." (Italics added.) "[H]itting with a belt and a switch crosse[s] the line over into abuse." (*In re Jasmine G*. (2000) 82 Cal.App.4th 282, 290-291.) But the record contains no evidence whatsoever that mother hit T. with anything other than her hand. Mother admitted only that she would "whoop" T., maybe once a month. The evidence the Department cites is mother's statement about the allegations concerning the grandparents' discipline in counts b-2 and b-3. That statement does not show that *mother* ever used a belt or a spoon. In fact, the only evidence concerning mother's discipline practices in Indiana was A.'s statement that *mother used her hand*.

Moreover, nowhere in the record is there evidence that mother's spankings were excessive in relation to the circumstances or that they left any residual marks on T. or caused her injury. Section 300, subdivision (a) does not define what constitutes "serious physical injury." However, the subdivision "has withstood a void-for-vagueness

7

challenge because the term has a sufficiently well-established meaning and is no less specific than the phrase 'great bodily injury.' [Citation.] 'Although there may be an "I know it when I see it" component to this factual determination [of what constitutes "serious physical harm"], as with the term "great bodily injury" we believe that parents of common intelligence can discern what injuries fall within its reach.' [Citation.]" (*In re Isabella F.*, *supra*, 226 Cal.App.4th at pp. 138-139.) Here, however, the record is absolutely devoid of any evidence that T. sustained any harm from mother's discipline in Indiana. Indeed, A. confirmed that T. never received bruises or marks from mother's spankings. (See *ibid.* [scratches incurred when mother attempted to spank child not serious physical harm].)

Section 300[3] can also apply when the child suffers less serious injuries although there is a history of repeated abuse or when the child is at risk of suffering serious physical harm in the future. (*In re Isabella F.*, *supra*, 226 Cal.App.4th at p. 139.) But the record here lacks any evidence that mother caused T. to suffer any physical harm and there is no evidence mother would continue to use physical discipline in the future as she has not hit the child since she moved to California. In short, the evidence amounts to this: In Indiana, mother spanked, or "whooped" T. once a month with her hand but never hard enough to leave a mark on the child. This record simply does not support the finding the children are dependents based on section 300, subdivision (a). Given the lack of evidence to support the allegations that mother inappropriately physically disciplined T., counts a-1 (severe physical abuse), b-1 (neglect) and j-1 (abuse of a sibling), which are predicated on the alleged physical discipline of T., must also be reversed.

---

**3** Subdivision (a) of section 300 allows the juvenile court to find a substantial risk of future injury "based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm."

3. *The record does not support the order sustaining the petition's remaining counts alleging that mother made an inappropriate plan by temporarily leaving the girls in the grandparents' care.*

The juvenile court sustained the allegations that mother made an inappropriate plan for the children's care and supervision by (count b-2) leaving them in the care of the grandparents who inappropriately physically disciplined them by striking them with a belt and a spatula. T. sustained an abrasion and marks and bruising to the knee; and (count b-3) leaving them in the care of the grandfather, who mother knew has a 30-year history of substance abuse and is a current abuser of alcohol, and who was under the influence of alcohol in the children's presence (count b-3).

Subdivision (b)(1) of section 300 authorizes dependency jurisdiction if a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of [the] parent . . . to adequately supervise or protect the child."

Section 300 requires proof that the child is subject to a statutorily recognized risk of harm at the time of the adjudication hearing. (*In re Savannah M*. (2005) 131 Cal.App.4th 1387, 1396; *In re Rocco M*. (1991) 1 Cal.App.4th 814, 824.) Although the court may consider past events in deciding whether a child is currently in need of the court's protection (*In re Rocco M*., *supra*, at p. 824) and although the court need not wait until a child is seriously abused or injured to assume jurisdiction, and may take steps necessary to protect the child (*In re N.M.* (2011) 197 Cal.App.4th 159, 165), *there must be a reason to believe that the conduct will continue*. (*In re S. O*. (2002) 103 Cal.App.4th 453, 461.) That is, the question under section 300 is whether circumstances at the time of the jurisdiction hearing subject the child to the defined risk of harm. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1453.) The conduct alleged in counts b-2 and b-3 is mother's plan of leaving the children in the grandparents' care. Hence, leaving the children with the grandparents may support jurisdiction but only if there is evidence that, at the time of the jurisdiction hearing, this inappropriate plan is ongoing or likely to continue. (*Ibid.*)

9

Here, the record shows that mother left the children with the grandparents in July 2014; the grandfather drinks alcohol; and mother gave the grandparents permission to discipline the girls on the butt. Mother did not give permission to "physically abuse[]" the children; the Department's assertion that she did is nothing more than hyperbole. Mother declared that she would never allow her children to be put in a situation where they would be victims of abuse.

Assuming, however, that mother made an inappropriate plan by sending her children to the grandparents, and assuming that the grandfather's drinking and discipline using a belt on T.'s knees constituted harm recognized by section 300,[4] there is no evidence that mother will leave the children with the grandparents again. Stated otherwise, there was no evidence at the time of the jurisdiction hearing that the children were at risk of being left alone with the grandparents or that this inappropriate plan is likely to continue in the future. Mother moved to California a week after the Department received the referral and so she no longer needed to rely on the grandparents to care for her daughters. The girls were immediately released to mother, with whom they have been ever since. Mother was cooperative with the Department, enrolled in parenting classes, assisted with T.'s WRAP services. In mother's care, the children were doing well and the social worker saw no concerns. Mother was even approved by the Department to serve as monitor for the grandparents' visits. Physical discipline should not be trivialized. However, mother and the girls now live in California with Anne N. and so mother no longer has an occasion to leave the girls with the grandparents.[5] The

---

[4]     We note the record contains no psychological assessment indicating that T.'s sweater incident reflects an emotional disturbance and that neither child is on any form of psychotropic medication.

[5]     Count b-3 alleges that mother made an inappropriate plan by leaving the children with the grandfather who drinks alcohol. Apart from the absence of evidence that mother will leave the children with the grandparents again, there is *no allegation* in count b-3 of any connection between grandfather's drinking and any harm to the children. (See *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003, and cases cited therein [marijuana use

10

order sustaining the counts under section 300, subdivision (b) is not supported by the evidence and must be reversed.

The purpose of the dependency system is to protect children who are currently being abused, neglected, or exploited, or who are at risk of that harm. (§ 300.2.) If the girls are left alone with anyone who poses a risk to their well-being, the Department may step in and file a petition to protect them. However, given there is no evidence that mother's discipline has caused the children harm, or that she is likely to leave them with the grandparents in the future, sustaining the petition's allegation under section 300, subdivision (b) was reversible error.

Because we conclude that the jurisdictional order must be reversed, the disposition order must also be reversed. (*In re Isabella F.*, *supra*, 226 Cal.App.4th at p. 141.)

---

" 'without more' " and tardiness to school a year earlier do not support dependency jurisdiction].)

## DISPOSITION

The order appealed from is reversed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




ALDRICH, Acting P. J.



We concur:




LAVIN, J.




HOGUE, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.