Filed 2/24/21  In re Joshua M. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In the Matter of JOSHUA M. et al., Persons Coming Under Juvenile Court Law. | B305008 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19LJJP00362A-C) |
| Plaintiff and Respondent, | |
| v. | |
| REBECA R., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Dismissed in part, affirmed in part.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Appellant mother Rebeca R. has three young sons: Joshua M., Jonathan P., and J.S. On behalf of the children, respondent Los Angeles County Department of Children and Family Services (DCFS) filed a petition with four counts, two under Welfare and Institutions Code section 300, subdivision (a) (Section 300(a)) and two under section 300, subdivision (b)(1) (Section 300(b)(1)), alleging that Mother's history of domestic violence endangered the children, particularly incidents involving Nicholas S., J.S.'s father.

In the proceedings below, the juvenile court found jurisdiction over all three children and Mother appealed, arguing that substantial evidence did not support the court's jurisdictional findings. However, by the time the opening brief was filed, the court had terminated jurisdiction as to Joshua and Jonathan, and noted they had both been released to their respective parents. We therefore dismiss as moot the appeal as to Joshua and Jonathan. We affirm the court's jurisdictional order as to J.S. because substantial

2

evidence supports the court's finding that he was a person described by Section 300(b)(1).

## STATEMENT OF RELEVANT FACTS

### A. *The Family*

Mother's three sons are Joshua M. (born Jan. 2009), Jonathan P. (born Feb, 2014), and J.S. (born Jul. 2017). Nicholas S. is the father of J.S. only. While Nicholas was named in the petition below, he is not a party to this appeal.

### B. *Mother's Previous Domestic Violence Incidents*

In August 2010, Mother was arrested for domestic violence. Following her completion of a court-ordered 52-week domestic violence program and anger management program, the charge was dismissed.

In August 2017, Mother was living with Nicholas and his other children at the house of Nicholas's mother.[1] During this time, one of Nicholas's other romantic partners (J. Cole) came to stay with them. One day, after Mother had put her children in the car, she returned to the house to retrieve something. When she entered Nicholas's bedroom, he told her to be careful because Cole was lying on a pallet

---

[1] Nicholas is the father of several other children, with several other women. Many of the children were also named in separate petitions heard simultaneously with the petition in this case, but Mother's appeal concerns only the petition filed on behalf of Joshua, Jonathan, and J.S.

next to the bed.  Mother admitted Cole's presence in Nicholas's bedroom upset her.  According to Marquise (one of Nicholas's sons), Mother then "'kicked the mess out of [Cole's] head.'"  Both Nicholas and Elijah (another of Nicholas's sons) confirmed this version of events, while Mother claimed she had merely (and accidentally) stepped on Cole's hand while stepping over her.  Immediately after this incident, Nicholas went outside, removed J.S. from Mother's car, and told Mother to leave.  The two then engaged in a "tug-of-war" over the month-old infant while he was in his car seat.

In October 2018, Mother and Nicholas began arguing while returning from Magic Mountain.  Nicholas was driving, Mother sat in the passenger seat, and Nicholas's son Elijah was in the back.  After Nicholas attempted to end the argument, and lit a cigarette, Mother slapped the cigarette from Nicholas's mouth into his lap, and threw a cupful of liquid at him while he was driving, causing him to swerve.  Nicholas struck Mother, though he claimed this was done reflexively.  Nicholas stated that the two did not speak for several weeks, after which things reverted to normal.  Elijah corroborated Nicholas's version of events.

### C.  *The April Incident in the Park*

In April 2019, DCFS received a referral regarding a recent altercation in a park between Mother and Nicholas that had occurred in front of the children.  While the parties' accounts differed as to who was the aggressor, they generally

4

agreed that Mother brought her three children to the park so that Nicholas could either see, or take custody of, J.S. Nicholas, who claimed the meeting was for a custody exchange, alleged that as he was removing J.S. from his car seat, Mother "'[j]umped on him' and was '[p]ulling him'" because she had changed her mind regarding exchanging custody. Nicholas stated he did nothing aggressive aside from trying to fend off Mother.

### D.     *The Petition*

In May 2019, DCFS filed a petition under Sections 300(a) and 300(b)(1) on behalf of all three children. Counts a-1 and b-1 identically alleged that Mother and Nicholas had a history of mutual domestic violence in the children's presence, describing the April 2019 incident in the park, as well as several others. Counts a-2 and b-2 identically alleged that Mother had "a history of violent and assaultive behavior in the children's presence," discussing the Cole incident. None of the children were detained.

The court found a prima facie showing had been made that the children were persons described by Welfare and Institutions Code section 300, but released all three children to their respective parents (with the exception of Jonathan, whose father's whereabouts were unknown -- he was released to Mother alone). Nicholas and Mother were ordered to stay away from each other and the other's children and romantic partners (current or former), and to communicate only electronically.

### E. *DCFS Continues to Investigate*

The parties' stories remained largely consistent upon further investigation. Regarding the April incident at the park that had occasioned the referral, Mother added that when Nicholas removed J.S. from the car seat, she tried to grab the baby by his ankles, but let go when Nicholas pulled away. Joshua mostly corroborated Mother's story and related a separate incident where he saw Mother fighting with Jonathan's father.

Nicholas acknowledged that he and Mother had engaged in several incidents of domestic violence over the span of four years, but said he did not think they constituted a "pattern" because each incident was a different situation. Regarding the April incident at the park, Nicholas provided additional details regarding how and when Mother struck him as he was removing J.S. from the car, noting that because he was holding J.S., he could not have struck Mother. Nicholas also related an incident in which, after he placed a dirty diaper in J.S.'s diaper bag as proof he had changed it, Mother found the diaper and threw it at him. He discussed yet another incident in which Mother grabbed his shirt and punched him in the chest. He denied ever intentionally hitting Mother. Cole confirmed that she would see scratches on Nicholas's neck after he had argued with Mother regarding custody issues and had seen her be "aggressive" with him. Nicholas's mother reported that she had seen Mother get "'furious and blank[] out,'" and that

6

Mother would frequently "'go[] off,' cursing and screaming" at Nicholas.

### F.    *Adjudication and Disposition*

Prior to the adjudication hearing, DCFS submitted a last minute information reporting that Nicholas and Mother had violated the court's stay-away order by traveling together (along with Nicholas's sons Marquise and Elijah) for an overnight trip to San Diego to jointly attend a real estate seminar in November 2019.  When asked why she had violated the stay-away order, Mother "adamantly stated" that a social worker had "told her that she 'did not have to comply with a stay away order if she felt it was not needed.'" DCFS noted, however, that the identified social worker "did not give [Mother] permission to violate the Court order." The last minute information also reported that Mother and Cole had an altercation in December 2019, when they ran into each other at a store.  Cole was present with Nicholas's son Marquise, and despite the court's order that Mother stay away from Nicholas's romantic partners and his children, Mother approached the pair and hugged Marquise, upsetting Cole.  An altercation ensued, though Mother, Cole, and Marquise disputed the details.

The court held a jurisdictional hearing on February 6, 7, and 19.  After admitting various exhibits, several witnesses testified.

Nicholas corroborated Mother's claim regarding the stay-away order, and explained he and Mother needed to

attend the seminar together because they jointly owned a residential redevelopment business. He reiterated his version of the April 2019 park incident, claiming that Mother was the aggressor, who had tried to "wrestle" J.S. away from him, had struck him while he was carrying J.S., and had grabbed one of his hands while he was carrying J.S. with the other hand. He also testified about the Magic Mountain car incident, and another incident in which Mother had grabbed and punched him.

Mother testified that she had enrolled in all the classes recommended by DCFS. She also testified about domestic violence incidents with Jonathan's father (claiming to be the victim), and a domestic violence incident with Joshua's father (giving no details as to who was the aggressor). Regarding the incident where she allegedly kicked Cole in the head, Mother again claimed she merely stepped on Cole's fingers accidentally, but admitted to struggling with Nicholas over J.S.'s car seat while the infant was in it. She also admitted to throwing liquid at Nicholas while he was driving in the Magic Mountain car incident, and acknowledged that doing so impaired Nicholas's vision and imperiled the lives of those riding in the car, including Nicholas's son Elijah. Regarding the incident in the park, she testified that at one point Nicholas was lifting J.S. up, and she held onto the infant's right leg, trying to wrest him away from Nicholas.

Several DCFS personnel testified that neither they nor anyone they knew gave the parents permission to disobey the court's stay-away order, or to go on the San Diego trip.

The court then heard argument. The children's counsel asked the court to sustain counts a-1 and b-1, arguing that although they may have disagreed on who was the aggressor, both parents had admitted to physical altercations on at least three instances in the presence of at least one child. Mother's counsel argued that she was the victim of domestic violence perpetrated by Nicholas, and she posed no current risk to the children because she reacted appropriately in the incidents that had occurred and was participating in all the recommended programs. Mother's counsel also asked the court to dismiss counts a-2 and b-2. Nicholas's counsel asked that he be found "non-offending" in counts a-1 and b-1, because the last altercation occurred in April 2019, and the evidence showed Mother was the aggressor, not him. DCFS's counsel asked the court to sustain all counts.

The court found both parents were not credible when they claimed DCFS had given them permission to go to San Diego together; this made it difficult for the court to weigh the conflicting stories regarding the domestic violence incidents. Ultimately, the court found that three incidents of domestic violence had occurred between Nicholas and Mother. Regarding the August 2017 incident, the court found that the parents had engaged in a "tug-of-war" over J.S. while he was in his car seat, which put him at risk.

Regarding the Magic Mountain car incident, the court stated that what it found "compelling about that incident is [Mother]'s astonishing lack of good judgment" in throwing a drink at a person driving on the freeway. The court noted Mother's conduct was "extremely dangerous" and placed Elijah at risk. As to the park incident, the court found it more likely that the parties were there for a custody exchange, Mother changed her mind, and there was "violence on both sides." The court found that J.S. was again in the middle of a tug-of-war between the parents. The court therefore amended and sustained counts a-1 and b-1.[2] The court also amended and sustained counts a-2 and b-2, pointing to statements from Marquise, Elijah, and Nicholas

---

[2] As amended, counts a-1 and b-1 identically read: "The children Joshua M[.], Jonathan P[.], and J[.] S[.]'s mother, Rebec[]a R[.] and mother's male companion Nicholas . . . , father of J[.S.], have a history of engaging in violent altercations in the children's presence. On 04/15/19, the mother slapped [Nicholas]'s hand, jumped on [Nicholas]'s back, grabbed and twisted [Nicholas]'s arm, and punched [Nicholas]'s arm and chest, in the child J[.S.]'s presence. [Nicholas] shoved the mother and pinned the mother against the car[, Nicholas]'s elbow into the mother's torso [sic]. On a prior occasion, the mother thew a dirty diaper at [Nicholas]. In October 2018 the mother slapped a cigarette out of [Nicholas]'s hand causing ashes to burn [Nicholas]'s hand, threw soda all over [Nicholas], and struck [Nicholas] while [Nicholas] was operating a vehicle while the children's half-sibling Elijah S[.] was a passenger in the car. Such violent conduct on the part of [Nicholas] and mother endangers the children's physical health and safety and places the children at risk of serious physical harm, damage, and danger."

10

that Mother had intentionally kicked Cole in the head.[3]  The court found that Mother "seems to almost seek out the conflict," pointing to the incident between Mother and Cole in the store, and opining that Mother "simply should have walked away and avoided any other interaction whatsoever." The court specifically found there was a current risk of violence between Nicholas and Mother because although Mother had previously completed a 52-week domestic violence course, Nicholas was Mother's third relationship marked by domestic violence issues; Nicholas had not taken any domestic violence classes; and the parties were running a business together, and were required to co-parent.  The court declared the children dependents of the court, released Joshua and J.S. to their parents, and released Jonathan to Mother only (as the whereabouts of his father were unknown).

Mother timely appealed.  With her opening brief she also filed a request for judicial notice (which we granted) showing that in March 2020, the court terminated jurisdiction as to Joshua and Jonathan.

---

[3]     As amended, counts a-2 and b-2 identically read:  "The children Joshua M[.], Jonathan P[.], and J[.] S[.]'s mother, Rebeca R[.] has a history of violent and assaultive behavior in the children's presence.  On a prior occasion, the mother kicked a non-related adult J[.] Cole's head.  Such violent conduct on the part of the mother endangers the children's physical health and safety and place[s] the children at risk of serious physical harm, damage, and danger."

## DISCUSSION

### A. *The Appeal Is Moot as to Joshua and Jonathan, but Not as to J.S.*

DCFS argues that the appeal is moot as to Joshua and Jonathan because the court has terminated jurisdiction over them, and therefore we can grant no effective relief. "When no effective relief can be granted, an appeal is moot and will be dismissed." (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.) Mother acknowledges that the court has terminated jurisdiction as to Joshua and Jonathan, but urges us to exercise our discretion to consider her appeal on the merits. We decline. With jurisdiction terminated, Joshua released to Mother and his father, and Jonathan released to Mother, there is no effective relief we could grant, and no foreseeable prejudice to Mother.

DCFS also argues that the appeal is moot as to J.S. because Nicholas did not appeal and, "[a]s a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) However, because jurisdiction has not terminated as to J.S., and the finding of jurisdiction due to Mother's actions could prejudice her in this ongoing case, we will exercise our discretion to consider her appeal as to J.S. (*Ibid.*)

**B.** *Substantial Evidence Supports Jurisdiction for J.S. Under Section 300(b)(1)*

Mother argues the court erred by finding jurisdiction under Section 300(b)(1) because substantial evidence supports neither a finding of risk at the time of the adjudication hearing, nor a finding that she was unable to protect her children.[4]  We disagree.

We review a court's finding of jurisdiction for substantial evidence.  (*In re A.M.* (2010) 187 Cal.App.4th 1380, 1387.)  Under a substantial evidence review, "'we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders.  Issues of fact and credibility are the province of the juvenile court and we neither reweigh the evidence nor exercise our independent judgment.'" (*In re Joaquin C.* (2017) 15

---

[4]     Though Mother also alleges the court erred in finding jurisdiction under Section 300(a), "[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)  Because we find substantial evidence supports the court's finding of jurisdiction under Section 300(b)(1), we need not address the sufficiency of the finding under Section 300(a).

Cal.App.5th 537, 560.) "Evidence from a single witness, even a party, can be sufficient to support the trial court's findings." (*In re Alexis E., supra,* 171 Cal.App.4th at 451.)

Several cases have held that a child's exposure to domestic violence can support a finding of jurisdiction under Section 300(b)(1). "Although 'the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133, italics omitted.) "Exposing children to recurring domestic violence may be sufficient to establish jurisdiction under section 300, subdivision (b). (*In re Heather A.* [(1996)] 52 Cal.App.4th [183, 193–194] [evidence of continuing violence between father and stepmother, where at least one incident occurred in presence of minors, was sufficient for jurisdictional finding]; see *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 [120 Cal.Rptr.3d 709] [physical violence can support jurisdictional finding where violence is ongoing or likely to continue, and places child at risk of physical harm].) "'Both common sense and expert opinion indicate spousal abuse is detrimental to children.'" (*In re E.B.* (2010) 184 Cal.App.4th 568, 576 [109 Cal.Rptr.3d 1].) Domestic violence impacts children even if they are not the ones being physically abused, 'because they see and hear the violence and the screaming.'" (*In re T.V., supra,* at 134.)

14

As discussed, substantial evidence supports finding that: (1) Mother was arrested for domestic violence in 2010 for an incident with Joshua's father; (2) in August 2017, she intentionally kicked Cole in the head while Cole was lying on the floor in Nicholas's bedroom, and then engaged in a "tug-of-war" with Nicholas over her month-old son, J.S., while the infant was in a car seat; (3) Mother once grabbed Nicholas's shirt and punched him in the chest; (4) in October 2018, while driving with Nicholas and Elijah, Mother threw liquid from a cup at Nicholas while he was driving on the freeway, causing him to swerve and endanger their lives; (5) during an April 2019 custody transfer, while Joshua and Jonathan were present, Mother assaulted Nicholas while he was carrying J.S., and held on to the baby's leg while attempting to wrest him from Nicholas; (6) in December 2019, when Mother encountered Cole and Marquise at the same store, Mother disregarded a court order to stay away from them, resulting in an altercation; and (7) Mother frequently lost her temper and was observed "'go[ing] off,' cursing and screaming."

These incidents support a conclusion that Mother was the aggressor in several domestic abuse incidents, that she intentionally sought out conflict, and that she often failed to consider the potential harm to the children around her before she acted. Further, Mother's overnight trip to San Diego with Nicholas demonstrated that regardless of Nicholas's alleged conduct, she had every intention of continuing to have a relationship with him.

15

On this record, it is immaterial that Mother's actions had not yet resulted in physical injury to the children at the time of the adjudication hearing. (*In re T.V.*, *supra*, 217 Cal.App.4th at 133 ["Juvenile dependency proceedings are intended to protect children who are currently being abused or neglected, 'and to ensure the safety, protection, and physical and emotional well-being of *children who are at risk of that harm.*' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child'"].) Substantial evidence supports the court's finding that Mother's actions in instigating, seeking out, and being involved in numerous acts of domestic violence, created an ongoing risk of substantial physical harm to her children.[5]

---

[5] Mother points to various pieces of evidence she asserts could have supported a finding that her children were not at risk at the time of the hearing, but such evidence is irrelevant. On a substantial evidence review, the order "will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

## DISPOSITION

We dismiss as moot Mother's challenge to the orders finding jurisdiction over Joshua and Jonathan. We affirm the court's order finding jurisdiction over J.S.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.

17