Filed 10/24/23  In re Derek A. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re DEREK A., a Person Coming Under the Juvenile Court Law. | B327632<br><br>(Los Angeles County Super. Ct. No. 22CCJP03584A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>FABIOLA M.,<br><br>        Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Dismissed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court declared now-10-year-old Derek A. a dependent child of the court after sustaining a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) and former (b)(1),[1] alleging Fabiola M., Derek's mother, had engaged in incidents of domestic violence with her boyfriend in Derek's presence and endangered Derek's physical safety by allowing her boyfriend to reside in the family home despite his ongoing alcohol abuse. The sustained petition also alleged Fabiola had medically neglected Derek by failing to ensure he received surgery to repair a life-threatening heart defect. On appeal Fabiola challenges only the jurisdiction finding regarding medical neglect. Because we cannot grant Fabiola any effective relief, we dismiss the appeal.

---

[1] The Legislature amended Welfare and Institutions Code section 300, effective January 1, 2023, in part by rewriting subdivision (b)(1) to now specify in separate subparagraphs various ways in which a child may come within the jurisdiction of the juvenile court as a result of the failure or inability of the child's parent or guardian to adequately supervise or care for the child.

Statutory references are to the Welfare and Institutions Code unless otherwise stated.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Petition and First Amended Petition*

On September 14, 2022 the Department filed a section 300 petition alleging, pursuant to subdivisions (a) and former (b)(1), that Fabiola and her boyfriend, Robert R., had a history of engaging in violent altercations in Derek's presence that placed Derek at substantial risk of serious physical harm.[2]  In a separate count pursuant to former subdivision (b)(1), the Department alleged Fabiola allowed Robert to reside in the family home despite knowing he was a current abuser of alcohol, which placed Derek at substantial risk of serious physical harm.

On November 2, 2022 the Department filed a first amended petition, which added an allegation pursuant to section 300, former subdivision (b)(1), that Derek was a medically fragile child who had been diagnosed with several serious medical conditions, including a serious heart defect.  The Department alleged Fabiola had failed to ensure Derek received surgery to correct the heart defect and had sabotaged efforts of the Department and the caregiver to obtain the surgery.[3]

---

[2]  Documents filed in the juvenile court in this case prior to February 1, 2023 were not included in the record on appeal.  The documents were, however, included in the records in two previously dismissed appeals filed by Fabiola (B324541 and B326095).  We augment the record on our own motion to include the records from those cases.  (See Cal. Rules of Court, rule 8.155(a)(1)(A).)

[3]  One week prior to the filing of the first amended petition, the juvenile court granted the Department's request to limit Fabiola's medical rights and granted his caretaker (maternal aunt Veronica M.) authority to provide legal consent for medical care.

### 2. *The Jurisdiction Hearing*

According to the detention and jurisdiction/disposition reports, Fabiola, Robert and Derek lived with Fabiola's parents and Fabiola's adult daughter in a senior living facility. Several family members and neighbors reported numerous domestic disturbances in the household with police intervention as often as once a week. In addition to reports of physical altercations between Robert and Fabiola, family members stated Fabiola had hit and kicked her parents at various times. During the most recent incident in July 2022 Robert and Fabiola called each other names and pushed and scratched each other. Police were called. They determined Fabiola had been the aggressor and arrested her. Derek said he had seen and heard the fight.

In addition to his unrepaired heart defect, Derek had been diagnosed with cerebral palsy, spasticity, seizure disorder, asthma, developmental delay and scoliosis. He received his medications and at least some nutrition through a gastrostomy tube. His last seizure was in August 2022.

In June 2022 Derek's cardiologist told Fabiola that Derek's heart defect needed to be repaired, and he explained the need for surgery in detail. The cardiologist's notes indicated Fabiola was "reticent" about surgery and did not want to make a decision until a custody dispute was resolved. The doctor also told Fabiola he was retiring and she should find a new doctor within the next two months to get a second opinion. As of October 2022 Fabiola had not taken any steps to find a new cardiologist or move forward with the surgery.

When the Department asked Fabiola about the need for surgery, she initially said Derek needed an ultrasound before the procedure and he could not get an ultrasound at the hospital

4

because he had not been vaccinated for COVID-19.  The Department noted that the medical records did not indicate a need for an ultrasound.  Fabiola also stated no one had explained the procedure to her and she was concerned Derek was too small for surgery.  Later, Fabiola claimed she had not scheduled Derek's surgery because his father did not consent to it,[4] she could not afford it; there were lapses in Derek's insurance coverage; she was moving and dealing with her other children; and it was put off because of the COVID-19 pandemic.

At the detention hearing the court ordered that Derek undergo an examination at a Los Angeles County medical hub clinic.  After that examination Derek was referred to a cardiologist who advised that his heart defect should be repaired within the next three months.  In a later conversation with the Department, the cardiologist explained the situation was not urgent but Derek should have the surgery within the next year.

Throughout this process Fabiola repeatedly cancelled medical appointments for Derek by calling physicians' offices and using a mobile application.  When asked about this by the Department, Fabiola denied cancelling appointments, claiming her phone had been hacked or that Derek's father had cancelled the appointments.  Fabiola asserted Derek did not need the heart surgery based on the opinion of his primary care doctor, who was

---

[4] Derek's father, Israel O., informed the Department Fabiola had not let him see Derek in three years.  He never opposed the heart surgery nor had there been a custody dispute preventing the surgery.  Israel also stated he had stopped having visits with Derek because Fabiola would repeatedly call the police to report him during visits even after visits were moved to a park outside the police station.

5

not a cardiologist. She also stated the cardiologist recommending surgery had several serious complaints against him. The Department determined there were no such complaints. Fabiola also cancelled multiple appointments the caregiver, maternal aunt Veronica M., had scheduled to receive training for Derek's care. Fabiola was reluctant to give Veronica Derek's medical equipment and medication, at one point denying she had the medication, despite records showing it had been shipped to her home. She also claimed Derek no longer needed his gastrostomy tube; however, Derek's doctor stated Derek needed to take medication and possibly nutrition through the tube for at least a few more months.

The Department reported Fabiola had been erratic, uncooperative and confrontational with the caregiver and Department staff. Fabiola had called the police multiple times, requesting welfare checks on Derek while he was residing with Veronica. She also argued with Department staff during visits and repeatedly discussed the case with Derek even after being admonished not to do so. She bombarded Department staff with telephone calls, emails and text messages regarding visitation scheduling and what she perceived as the staff's inappropriate behavior. Because of Fabiola's erratic behavior, poor judgment and baseless accusations, the Department requested Fabiola undergo a psychiatric evaluation.

At the jurisdiction hearing on January 6, 2023 the juvenile court sustained the allegations in the first amended petition. The court noted Fabiola did not deny the domestic violence incidents had occurred, although she claimed not to be the aggressor, and there was evidence in the record indicating Fabiola wanted to continue her relationship with Robert. Turning to the medical

6

neglect allegation, the court found Fabiola had delayed getting Derek necessary surgery and had otherwise interfered with his medical care. The court repeatedly expressed concern about Fabiola's credibility and judgment. Finally, revisiting its earlier order limiting Fabiola's medical rights, the court reiterated its finding there was clear and convincing evidence it was in Derek's best interests for Fabiola not to be involved in making medical decisions for him.

     3. *The Disposition Hearing*

     In a report filed February 1, 2023 the Department informed the court Derek had successfully undergone heart surgery three weeks earlier and was recovering well. Derek had failed hearing tests in both ears and might require hearing assistance devices. The Department also reported Fabiola had continued to be uncooperative and combative with Department staff and there were ongoing concerns about her judgment and credibility. The Department again requested Fabiola be required to undergo a psychiatric evaluation.

     At the disposition hearing on February 8, 2023 the juvenile court removed Derek from Fabiola, finding by clear and convincing evidence that Derek was at risk of harm in Fabiola's care. In making this finding the court relied on the repeated and recent domestic violence in the home, as well as Fabiola's refusal to ensure Derek was receiving critical medical care. The court found, if Derek were released to Fabiola, she would continue to rely on medical professionals who lacked specialized training. The court agreed with the Department that there were signs of an undiagnosed mental health condition, noting Fabiola lacked understanding of her situation, and appointed an expert pursuant to Evidence Code section 730 to examine Fabiola. The

court stated that Fabiola's "focus is on fighting with the Department, rather than focusing on [Derek's] needs."

The court ordered family reunification services and monitored visits for Fabiola for three hours per week in a neutral setting. Fabiola filed a timely notice of appeal.[5]

## DISCUSSION

"A court is tasked with the duty to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. A case becomes moot when events render it impossible for a court, if it should decide the case in favor of plaintiff, to grant him any effective relief. For relief to be effective, two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276 [cleaned up].)

---

[5] In addition to the current appeal Fabiola filed multiple appeals from nonappealable orders entered prior to the disposition hearing, which we dismissed (B324541, B326095 and B326333), and has pending appeals from a May 10, 2023 order reducing her visitation time (B329302), a July 10, 2023 order regarding the psychiatric evaluation (B330720) and orders entered at the August 9, 2023 six-month review at which the court found that Fabiola's compliance with her case plan had only been partial and that returning Derek to Fabiola's physical custody would create a substantial risk of detriment to the child (B331754).

8

Fabiola contends the court's jurisdiction finding of medical neglect is not supported by substantial evidence. However, even if we were to agree with Fabiola and reverse the jurisdiction finding of medical neglect, jurisdiction over Derek would continue based on the court's sustained jurisdiction findings regarding domestic violence and Robert's substance abuse. (See *In re D.P., supra*, 14 Cal.5th at pp. 283-284 ["where there are multiple findings against one parent[,] the validity of one finding may render moot the parent's attempt to challenge the others"]; *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"]; see also *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; *In re Briana V.* (2015) 236 Cal.App.4th 297, 310-311.) Nor would a reversal of the medical neglect finding limit the court's authority to make all orders necessary to protect Derek: The juvenile court's "broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with that discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings." (*In re K.T.* (2020) 49 Cal.App.5th 20, 25; accord, *In re Briana V.*, at p. 311 ["The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. [Citation.] In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order"]*; In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 ["[a] jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent,

once dependency jurisdiction has been established"]; see generally § 362, subd. (a) [the juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child"].) Accordingly, reversal would have no effect on the court's jurisdiction over Derek or mandate a change to the disposition order. Because we can provide no effective relief to Fabiola—that is, relief that "'can have a practical, tangible impact on the parties' conduct or legal status'" (*In re D.P.*, at p. 277)—her appeal is moot.

Fabiola contends her appeal is not moot because the medical neglect finding formed the basis for the court's disposition order removing Derek from Fabiola's custody—an order that continues to adversely affect Fabiola. While this may be true, Fabiola has not challenged the disposition order on appeal. She provides no argument that the removal order was unsupported by clear and convincing evidence that Derek would be at substantial risk of physical or emotional harm if Derek were returned to her care, nor does she suggest any reasonable means by which Derek could have been protected without removal. (See § 361, subd. (c).) Accordingly, even if the medical neglect finding were reversed, Fabiola has not established any basis on which we could (or should) reverse the disposition order.[6]

---

[6] Without directly challenging the disposition order, Fabiola argues we should reverse the medical neglect finding and remand the matter for the juvenile court to reconsider its disposition order. However, the court removed Derek from Fabiola's care based on several factors, including ongoing domestic violence and Fabiola's erratic behavior and inability to prioritize Derek's needs. Nothing in the record suggests the court would make different orders at disposition if the medical neglect finding were

Fabiola also argues we should exercise our discretion to consider her moot appeal because the medical neglect finding is particularly egregious and could impact future dependency proceedings. However, such a speculative claim of future harm is insufficient to obviate mootness. (*In re D.P., supra,* 14 Cal.5th at p. 278.) In addition, Fabiola does not dispute the central fact underlying the medical neglect finding—she did not schedule a procedure to repair Derek's heart defect. While she maintains she had valid reasons for her decision, in light of her concession and the evidence from Derek's doctors that he needed the surgery, all of which will be admissible in any future proceedings involving Derek, the court's additional finding that Fabiola's failure to pursue the recommended treatment constituted neglect is not particularly harsh or extreme. No other factor justifies reaching the merits of this moot appeal.

## DISPOSITION

The appeal is dismissed as moot.


PERLUSS, P. J.


We concur:


SEGAL, J.                                    MARTINEZ, J.

---

reversed. And, as discussed, Fabiola made no showing the disposition order requires reversal.