Filed 5/13/24  In re S.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re S.A. et al., Persons Coming Under the Juvenile Court Law. | |
| | D083270 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J521278A/B) |
| Plaintiff and Respondent, | |
| v. | |
| J.A., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Marissa A. Bejarano, Judge.  Appeal dismissed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Indra N. Bennett, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

J.A. (Mother) appeals juvenile court orders declaring her children, S.A. and R.A., dependents of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivision (b)(1)(D).[1] Mother contends the juvenile court's jurisdictional findings are not supported by substantial evidence. As we shall discuss, we conclude Mother's appeal is not justiciable because the unchallenged jurisdictional findings against the children's father, R.V. (Father), support continued jurisdiction over the children. We therefore dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were both diagnosed with schizophrenia and have experienced auditory and visual hallucinations as symptoms of their diagnoses. Additionally, Mother was diagnosed with an intellectual disability, and Father with anxiety, depression, and paranoia. The parents have a history of failing to take their medications as prescribed, and they have not consistently engaged in mental health treatment.

Between September 2022 and June 2023, the San Diego County Health and Human Services Agency (Agency) received four referrals involving Mother, Father, and their two children.[2] In the most recent referral in June 2023, a public health nurse found Mother unresponsive in the paternal grandparents' home where Mother was residing with Father and R.A. Mother had a weak pulse and was taken to the hospital by ambulance.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Mother is the biological parent of R.A. and S.A. Father is R.A.'s biological parent, and although he is not S.A.'s biological father, the juvenile court designated him as her presumed father on September 5, 2023.

2

Although the cause of Mother's unresponsiveness was unknown, paternal grandmother informed the Agency that when Mother "takes her anxiety medication she falls asleep."

During the investigation of the June 2023 incident, Mother told the Agency she had seen a "shadow spirit" who resembled one of her family members. Mother reported that the spirit tried to kill her and also that the spirit told her to "kill." When the social worker asked Mother who the spirit directed her to kill, she responded, "I don't kill myself. I want to go to heaven."

Mother also informed the Agency that Father was physically and emotionally abusive towards her. According to Mother, Father strangled her while S.A. was in the home and R.A. was in the same room. She also alleged Father was currently abusing drugs.

In July 2023, the Agency learned Father was hospitalized after he stopped taking his medications and began experiencing delusions in which he believed he was dying. Father was forced to go to the hospital by the police and held pursuant to section 5150.[3] Mother told the Agency that Father's delusions caused him to believe he was "going to die and kill himself. He thinks he is going to hell and die." Paternal grandmother admitted she encouraged Father not to take his medication in hopes that he would "cure himself."

---

[3] Section 5150 permits a person who poses a danger to themselves or other, as a result of a mental health disorder, to be detained in a treatment facility for the purpose of assessment, evaluation, and crisis intervention. (§ 5150, subd. (a).)

A few weeks following his hospitalization, Father took medication and fell asleep while caring for R.A. Father was alone in the family home with R.A., and Mother was locked out of the residence. A neighbor could hear R.A. screaming and crying, and she observed Mother knocking loudly. After approximately 30 minutes, Mother gained entrance to the home with the help of the neighbor and property manager. Following this incident, the family entered into a safety plan with the Agency in which the children were not permitted to be left unsupervised with Mother or Father.

Meanwhile, Mother signed a power of attorney designating six-year-old S.A.'s care to the maternal grandmother, with whom S.A. resided. S.A. spoke with an Agency social worker and became emotional more than once during their conversation. She told the social worker Father drinks a lot and scares her. S.A. described Father as "crazy" and said he uses "bad words."

In August 2023, the Agency filed juvenile dependency petitions on behalf of S.A. and R.A., pursuant to section 300, subdivision (b)(1)(D). Following amendments to the petitions,[4] count 2 alleged:

> On or about September 2022 to present the parents have mental illnesses, including, but not limited to, both parents are diagnosed with schizophrenia and experience auditory and visual hallucinations. In addition, the father is diagnosed with anxiety, depression, and paranoia and the mother is diagnosed with a cognitive delay, with an IQ of 58 and the functioning of a 6-year-old. Both parents have a history of poor follow through and consistency with treatment and services, including but not limited to, as recently as July 2023 the father stopped taking his medication at the encouragement of the paternal

---

[4]    At the detention hearing, count 1 of both petitions was dismissed. Count 2 of R.A.'s petition is substantially the same as count 2 of S.A.'s petition, although they contain slightly different language.

> grandmother, resulting in the father experiencing delusions that required medical attention. Furthermore, in June 2023 the mother was found incapacitated and unable to care for the child and in July 2023, the father was found incapacitated and unable to care for the child. Both parents lack insight into their mental health and the need for consistent medication and treatment, all of which renders them incapable of providing regular care for said child and said child is in need of the protection of the Juvenile Court.

At the detention hearing, the court made prima facie findings the children fell within the jurisdiction of the juvenile court and detained them in the care of their paternal aunt.

Thereafter, the Agency documented Mother and Father's failure to consistently engage in their mental health treatment. The Agency noted in their reports that Mother had not consistently taken her medication and she missed appointments with her treatment team. Father stopped or changed his prescribed medication several times, and he informed the Agency he "wanted to see if he [could] 'handle' schizophrenia without medication." Consequently, the Agency expressed concern that the parents would continue to "neglect their own mental health, which [would] cause the parents to fail to provide the appropriate supervision and protection to the children."

The juvenile court conducted a contested jurisdiction hearing on December 7, 2023. Without objection, the court received several Agency reports into evidence, as well as a letter from Mother's treatment provider. The parties declined to present oral testimony, and following the parties' arguments, the court made true findings on the amended petitions and declared the children dependents of the juvenile court.

5

In issuing its decision, the court acknowledged the parents' mental illnesses, on their own, were not sufficient to sustain the allegations in the petitions. Rather, under section 300, subdivision (b)(1)(D), the Agency bore the burden of proving a "causal connection or nexus between the current conditions and substantial risk of harm in the future to the children." The court found such a causal connection, finding that the risk stemmed from the parents' delusions in which they had thoughts of killing themselves or others. The court also noted Father was found incapacitated while caring for R.A., and that the parents had not consistently engaged with their mental health treatment or maintained their prescribed medications.

However, the court also found the children should not be removed from the parents' home because there were reasonable means to protect the children short of removal. The court ordered the children placed in Mother's and Father's care on the condition that the family was to reside with the paternal grandparents. The court also required Mother and Father to remain compliant with their prescription medications.

Mother timely appealed the court's jurisdictional orders.

DISCUSSION

Mother challenges the sufficiency of the evidence supporting the juvenile court's jurisdictional findings. The Agency contends, however, that Mother's appeal is not justiciable because the unchallenged jurisdictional findings as to Father continue to support jurisdiction over the children. Mother has not filed a reply brief addressing the Agency's justiciability argument; we interpret Mother's failure to respond to the Agency's contention as an implicit concession of the argument's merits. (See *Rudick v. State Bd.*

6

*of Optometry* (2019) 41 Cal.App.5th 77, 89-90 [appellants implicitly conceded by "failing to respond in their reply brief to the [respondent's] argument"].)

In juvenile dependency proceedings, "[t]he law's primary concern is the protection of children." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) As a result of this focus on the children, rather than the parents, "it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child." (*Ibid.*) In other words, "a jurisdictional finding good against one parent is good against both." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) Thus, as a general rule, when a dependency petition involves allegations against both parents, "a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 (*M.W.*).)

Here, count 2 of the amended petitions included multiple allegations against both parents. At the jurisdictional hearing, the Agency presented evidence of separate incidents in which Mother's and Father's independent mental health issues rendered them unable to care for the children. For example, the Agency alleged that Mother was found incapacitated, while R.A. was in the family home, in a manner that required Mother's hospitalization. A month later, Father was found similarly incapacitated while caring for R.A. The Agency alleged that *each parent* failed to consistently engage in their mental health treatment or take their medication as prescribed, leading to a substantial risk of harm to the children.

The substantial risk of harm posed by Father's conduct and his related mental health issues was an independent basis supporting the juvenile court's jurisdiction. Thus, even were we to agree with Mother that substantial evidence did not support a finding she was unable to care for the

7

children, the findings as to Father would continue to support the juvenile court's jurisdiction. Although there are cases in which one parent's serious mental illness did not provide sufficient grounds for jurisdiction where the other parent was able to provide adequate care for the children, this is not such a case. (See *In re A.G.* (2013) 220 Cal.App.4th 675; *In re A.L.* (2017) 18 Cal.App.5th 1044.) Rather, here, in addition to the findings against Mother, the juvenile court based its jurisdiction on the substantial risk that Father's conduct posed to the children.

Nevertheless, we retain discretion to "consider the merits of a parent's appeal [citation], and often do so when the finding '(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction." ' " (*M.W., supra*, 238 Cal.App.4th at p. 1452.) For example, appellate courts have exercised discretion to review jurisdictional findings where the outcome of the appeal could affect whether a parent was considered an "offending" parent for the purposes of custodial placement. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763, disapproved on other grounds in *In re D.P.* (2023) 14 Cal.5th 266, 283; *In re Andrew S.* (2016) 2 Cal.App.5th 536, 542, fn. 2 [exercising discretion to consider father's challenge to jurisdiction finding where finding could impact whether children should be placed with father as noncustodial parent].)

No such circumstances exist here. The juvenile court returned the children to the parents' custody at the combined jurisdiction and disposition hearing, and therefore the court's jurisdictional findings did not affect the children's custodial placement. Mother does not challenge the court's dispositional orders on appeal, and the record does not demonstrate potential

consequences from the juvenile court's findings beyond jurisdiction. Accordingly, we decline to address the merits of Mother's claims and dismiss the appeal as nonjusticiable.

DISPOSITION

The appeal is dismissed.


KELETY, J.

WE CONCUR:

HUFFMAN, Acting P. J.

CASTILLO, J.