Filed 9/18/25  In re Everleigh G.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re EVERLEIGH G., A Person Coming Under the Juvenile Court Law, | B343369 (Los Angeles County Super. Ct. No. 24CCJP02211) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JENNIFER S., Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Daniel Z. Zeidler, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Jennifer S. (mother) appeals the trial court's exertion of dependency jurisdiction over her three-year-old daughter Everleigh, asserting that it is unsupported by the evidence. Because substantial evidence supports several of the grounds for jurisdiction, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

I.  **Facts**

A.  *The family*

Mother and Everett G. (father) had Everleigh in May 2022.[1] Mother and father's romantic relationship ended in 2023 and they did not live together in 2024, but they were actively coparenting Everleigh and father often visited mother and Everleigh at mother's residence.

---

[1]  Mother and father each have other children, but they are not in their custody and are not at issue in this case.

**B.** *Incidents giving rise to dependency jurisdiction*

   1. *Domestic violence*

On June 26, 2024, while father was visiting mother and while mother held Everleigh in her arms, father grabbed mother by her hair, threw a cup at her, burned her arm with a lit cigarette, and pushed her down onto the bed.[2]  Father later admitted that he had lost his temper at mother.

In addition to prior verbal altercations, the June 2024 incident was not the first incident of physical violence between mother and father.  Father had pushed mother or grabbed her by the throat a few times before she was pregnant with Everleigh, and father got into a physical altercation with her in February 2024.  Mother did not report any of these prior incidents to law enforcement.

Although mother reported the June 2024 incident to law enforcement and obtained an emergency protective order against father, she did not renew or enforce the order and immediately thereafter permitted father to enter her residence.

   2. *Everleigh's broken femur and ear infections*

On July 11, 2024, mother brought Everleigh to the California Hospital with a fractured femur and ear infections that had gone untreated long enough for fluid to be dripping from her ears.  Mother explained that Everleigh had injured herself tripping over the family dog the day before.  Although the treating physicians "suspected child abuse" and contacted law

---

[2]   Although father later reported that the cigarette was unlit and the record is inconsistent regarding whether mother was actually holding Everleigh during the incident in question, we view the record in the light most favorable to the juvenile court's ruling.

enforcement because mother's explanation of Everleigh's femoral injury was "not consistent with the injury," subsequent doctors opined that mother's explanation was "plausible" and consistent with "tripping over a dog."

### 3. *Father's drug use*

After proclaiming that he did not use drugs on July 12, 2024, father on the same day tested positive for methamphetamine and amphetamines. Father then admitted that he used methamphetamine a few times in 2024, and the Department discovered he had been arrested several times for possession of a controlled substance in the past. Although mother denied knowing of father's substance abuse, father reported that mother was aware of it because he ingested the drugs in her presence.

## II. Procedural Background

On July 16, 2024, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Everleigh. As relevant here, in the operative, first amended petition, the Department alleged that jurisdiction was appropriate because (1) mother and father had "medically neglected [Everleigh] by failing to obtain timely and necessary medical treatment" for her fractured femur and ear infections; (2) father "is a current user of marijuana, methamphetamines and amphetamines" and has a "history of substance abuse" that renders father "incapable of providing regular care for" Everleigh, and mother "knew or reasonably should have known of father's substance abuse" but "continued to allow [him] to have unlimited access" to Everleigh; and (3) father has "a history of engaging in violent altercations in [Everleigh's] presence," and mother "failed

4

to protect the child" by "allow[ing] . . . father to frequent the child's home and have unlimited contact with the child." The Department further alleged that this conduct "endangers the child's physical health and safety, creates a detrimental home environment," "places the child at risk of serious physical harm, damage, danger and medical neglect," and thereby warrants the exercise of dependency jurisdiction under subdivision (b) of Welfare and Institutions Code section 300.[3]

On January 7, 2025, the trial court held the jurisdictional and dispositional hearing. The court sustained the above-enumerated allegations as stated, removed Everleigh from father while placing her in mother's custody, and ordered family maintenance services for mother and reunification services for father.

Mother filed this timely appeal.[4]

## DISCUSSION

Mother argues that the juvenile court erred in exerting dependency jurisdiction over Everleigh because all three of the court's asserted grounds for jurisdiction lack evidentiary support.

[3]    All subsequent statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The juvenile court did not sustain the Department's allegations that the parents had non-accidentally caused Everleigh's femoral injury, that *mother* had inflicted domestic violence on father, and that the domestic violence allegations warranted the exercise of jurisdiction under subdivision (a) of section 300.

[4]    The Department asks us to take judicial notice of subsequent developments in the proceedings below, including later-filed supplemental petitions with new allegations against both parents. We deny the Department's request.

5

Although each ground alleges conduct by mother *and father* and although father has not appealed, mother can and does challenge the evidence as to *both* parents in this appeal. (*In re B.H.* (2024) 103 Cal.App.5th 469, 481-482 (*B.H.*); cf. *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 ["[A] jurisdictional finding good against one parent is good against both"].) However, because a single ground for jurisdiction is sufficient, we may affirm as long as any of the grounds for jurisdiction is valid. (*In re D.P.* (2023) 14 Cal.5th 266, 283 (*D.P.*).) Where, as here, a parent challenges a juvenile court's jurisdictional findings for lack of evidentiary support, our task is to ask whether substantial evidence supports those findings. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Because, as explained below, substantial evidence supports the juvenile court's exertion of dependency jurisdiction based on the allegations of domestic violence and substance abuse, we need not determine whether substantial evidence also supports the exertion of jurisdiction based on medical neglect.

## I.    Domestic Violence

Dependency jurisdiction may be exercised under subdivision (b) of section 300 when a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" "[t]he failure or inability of the child's parent . . . to adequately supervise or protect the child." (§ 300, subd. (b)(1)(A).) Exposing a child to domestic violence can constitute a failure to protect a child from the risk of serious physical injury under this subdivision. (*In re L.O.* (2021) 67 Cal.App.5th 227, 238; *In re R.C.* (2012) 210 Cal.App.4th 930, 941.) This risk of harm must exist at the time of the jurisdictional hearing (*In re M.M.* (2015) 240 Cal.App.4th 703, 719), so the risk arising from a child's exposure to domestic

violence turns in part on whether "the violence is ongoing or likely to continue." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 (*Daisy H.*), disapproved on other grounds by *D.P.*, *supra*, 14 Cal.5th at p. 278; *In re M.W.* (2015) 238 Cal.App.4th 1444, 1453-1454; *In re L.B.* (2023) 88 Cal.App.5th 402, 411.) In examining this risk, however, the juvenile court need not wait for a child to be injured before stepping in (*In re T.V.* (2013) 217 Cal.App.4th 126, 134), and a parent's past conduct can be a reliable predictor of future risk (*R.C.*, at p. 942).

Substantial evidence supports the juvenile court's finding that Everleigh faces a risk of physical harm based on father's domestic violence against mother and mother's failure to protect Everleigh. Mother and father have a history of domestic violence that dates back several years and occurred as recently as incidents in February 2024 and June 2024. These last two incidents occurred even after mother and father ended their romantic relationship and while they lived apart. Although the most recent incident occurred six months before the jurisdictional hearing in January 2025, the risk of harm remained in light of the longstanding volatile nature of their relationship, which had withstood longer lapses before flaring back into violence. This pattern of conduct poses a risk of physical harm to Everleigh because it has at times occurred in Everleigh's presence and thus when she was in harm's way. Mother has also not taken steps to protect Everleigh: Although she called law enforcement after the June 2024 incident, she did not call them after the prior incidents, did not renew the emergency protective order after the June 2024 incident, and invited father back into the home in July 2024.

7

Mother responds with two further arguments.  First, she argues that there is no longer any risk because she called the police after the June 2024 incident and obtained an emergency restraining order, the juvenile court ordered only monitored visits going forward, and Everleigh was not injured during any of the prior domestic violence incidents.  Although mother called the police after the latest incident and obtained a short-term restraining order, she did not call the police after the many prior incidents, allowed the restraining order to expire, and then invited father back into her residence.  The monitored visits going forward do not affect the risk at the time of the jurisdictional hearing.  And the fortuity that Everleigh has not yet been injured does not eliminate the risk of injury.  Second, mother asserts that this case is like other decisions where there was insubstantial evidence of risk to the child—namely, *In re Jesus M.* (2015) 235 Cal.App.4th 104; *B.H.*, *supra*, 103 Cal.App.5th 469; and *Daisy H.*, *supra*, 192 Cal.App.4th 713.  But each of those decisions is distinguishable on their facts:  The court in *Jesus M.* held that there was no risk where the last incident of physical violence was more than three years prior and where the alleged risk of physical harm was based solely on father's violation of a restraining order by verbally denigrating the mother in front of the children (*Jesus M.*, at pp. 111-113); the court in *B.H.* held that there was no risk when the last incident of domestic violence occurred eight years prior to the jurisdictional hearing and the parents rarely interacted (*B.H.*, at pp. 482-483); and the court in *Daisy H.* held that there was no risk when the last incident of domestic violence occurred two or seven years prior to the jurisdictional hearing (*Daisy H.*, at p. 717).

## II.  Substance Abuse

Dependency jurisdiction may be exercised under subdivision (b) of section 300 when a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" a parent's "inability . . . to provide regular care for the child due to the parent's . . . substance abuse."  (§ 300, subd. (b)(1)(D).)  As pertinent here, this requires the Department to prove that "(1) substance abuse (2) makes a parent . . . unable to provide regular care for a child and (3) this inability . . . creates a substantial risk" "the child" may "suffer serious physical harm or illness."  (*In re N.R.* (2023) 15 Cal.5th 520, 558 (*M.R.*).)

Substantial evidence supports the juvenile court's finding that Everleigh faces a risk of harm due to father's abuse of methamphetamine and amphetamines and mother's failure to protect Everleigh from his substance abuse.  It is undisputed that father was using these drugs in the summer of 2024, that he lied to the Department about using them, and that mother denied knowing of that use while father freely admitted mother knew. Father's and mother's unwillingness to admit to father's drug use, in conjunction with Everleigh's young age and father's volatile temper flaring into violence, creates a substantial risk of injury due to that substance abuse and mother's failure to protect Everleigh from it.  (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["Denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"]; *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [same]; *N.R.*, *supra*, 15 Cal.5th at pp. 558-559 ["It is reasonable for courts to infer that very young children require a substantial degree of close supervision"].)

9

## DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
KIM (D.)